**Manuel Alex OLIVAS, Jr., alias Manuel Vasquez Olivas, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–81–00035–CR.**

Court of Appeals of Texas,
El Paso.

March 17, 1982.

---

Law Offices of Gerald R. Lopez, Gerald R. Lopez, Odessa, for appellant.

Wm. M. Holmes, Dist. Atty., Odessa, for appellee.

Before STEPHAN F. PRESLAR, C. J., and WARD and SCHULTE, JJ.

## OPINION

WARD, Justice.

This is an appeal from a conviction for possession of heroin, alleged to have occurred in Odessa, Texas, on June 14, 1979. The indictment was enhanced by allegation of two prior felony convictions for possession of heroin. The jury found the Appellant guilty and found "true" as to the prior convictions. Appellant was sentenced to life imprisonment. We affirm.

Prior to trial, the court heard and overruled the Appellant's Motion to Suppress, challenging the sufficiency of the warrant to support the search of his premises.

The State presented the testimony of Detective Jim Dodson, Odessa Police Narcotics Service. Dodson testified that he and other officers, acting upon an informant's tip, set up surveillance at the rear of Appellant's mobile home at 8:00 p. m., June 13, 1979. At 9:52 p. m., the Appellant exited his trailer and went to the rear corner of his fenced back yard. He bent down and picked something up. After several minutes of looking up and down the alley, he left his enclosed yard and proceeded to a vacant strip between his rear fence line and the alley proper. Evidence at the suppression hearing clearly demonstrated that this was still on his leased property.

He again bent down, dug a hole with his hands, placed an object in the hole and covered it up. He then returned to the trailer. Detective Dodson testified that throughout this action, the Appellant acted nervously, watching up and down the alley.

Dodson left and secured a search warrant for the premises. During his absence, Officer Phil Hopkins maintained surveillance. He testified that no one approached the area where Appellant was seen digging.

No challenge was made to the sufficiency of the affidavit or warrant with regard to establishing probable cause. The challenge was based upon a variance in the address specified in the warrant and the actual address of the Appellant. Dodson testified that he had known the Appellant for four or five years. He had executed a warrant involving the Appellant at the same premises in July, 1978. That warrant did not specify the street address, but gave directions to its location and described the mobile home as having light brown panelling with a dark brown band around the middle. At the time of the 1978 arrest, Appellant indicated that his address was 1213D West Ada Street. His driver's license, a copy of which was introduced at

the suppression hearing, also indicated an address of 1213D West Ada.

Detective Dodson used the same information to obtain the search warrant in this case. The defense produced testimony and photographic evidence that, at the time of the search, the premises bore an address of 1307 West Ada.

Bill Kirkendoll, Odessa City Planning Department, testified that on August 16, 1978, Appellant's mobile home lot was officially redesignated from 1213D West Ada Street to 1307 West Ada Street. Notices had been sent to the property owners, the post office, the utility companies and the various tax offices.

Mike Frambro, owner of the mobile home lots, testified that he personally changed the numbers on the Appellant's mail box after the Planning Department notice. Mr. Frambro, Mr. Kirkendoll, and Private Investigator Bill Barker testified that to their knowledge there was no longer any such address as 1213D West Ada. Kirkendoll and Frambro testified that anyone trying to locate 1213D and asking for their assistance would be directed to 1307 West Ada. Defendant's Exhibit No. 14 was introduced to show two frame houses, numbered 1211 and 1215 West Ada. Presumably, the vacant lot between the houses is destined to bear the 1213D address.

Investigator Barker testified that Appellant's mobile home matched the physical description contained in the warrant. He also indicated that three mobile homes on the 1300 block and one mobile home on the 1200 block could be described in a similar manner.

Detective Dodson returned to the Appellant's premises with the warrant. The Appellant was brought from the trailer. After a ninety-minute hands-and-knees search, Dodson located a plastic bag, wrapped in brown paper, buried one and one-half inches in the ground. The location corresponded to the place where the Appellant was previously observed digging. Subsequent chemical analysis revealed that the bag contained 4.83 grams of heroin.

Attorney Warren Heagy was present during the search, in a capacity adverse to the interests of the Appellant. He testified that, each time Dodson came near the ultimate heroin site, the Appellant would engage Dodson in conversation. As Dodson moved away, the Appellant would resume discussion with Heagy and another officer. It appeared to Heagy that the Appellant was attempting to distract Detective Dodson from the heroin location.

Appellant presents three grounds of error, the invalidity of the search warrant and two grounds challenging the sufficiency of the evidence.

Despite the challenge to the search warrant, neither the warrant nor the affidavit were introduced for the record. The Appellant does not raise this issue on appeal. The record of the suppression hearing does reveal that the trial court examined the warrant. Sufficient uncontested evidence as to the contents of the warrant is present in the record to enable us to resolve the merits of this ground of error.

The warrant specified an address of 1213D West Ada. It also contained an appropriate physical description of the mobile home. Dodson knew the Appellant for four or five years. He had searched the same premises and arrested the Appellant there eleven months prior to this search. He observed the Appellant there one hour before securing the search warrant. The record does not directly address the occupant-possessor averments of the affidavit and warrant. No challenge was made to this feature of the warrant. It may, therefore, be presumed that Appellant Olivas was so identified by name on the warrant.

An examination of Texas case law from 1938 to the present discloses eighteen cases bearing on this issue. Of those cases, three involved failure to specify the city or county in which the premises were located. Thirteen involved discrepancies between the street name or address number indicated in the warrant and the premises actually searched.

It is now well-settled that technical discrepancies in the descriptive portions of a

search warrant will not automatically vitiate the warrant's validity. *Bridges v. State*, 574 S.W.2d 560, 562 (Tex.Cr.App. 1978); *Smith v. State*, 478 S.W.2d 518, 521 (Tex.Cr.App.1972); *McCormick v. State*, 169 Tex.Cr.R. 53, 331 S.W.2d 307, 308 (1960).

For many years, the Texas test for the sufficiency of the description was whether the officer executing the warrant could, with reasonable effort, locate the premises and distinguish it from others in the community. *Rhodes v. State*, 134 Tex.Cr.R. 553, 116 S.W.2d 395, 396 (1938); *Etchieson v. State*, 574 S.W.2d 753, 759 (Tex.Cr.App.), *cert. denied*, 440 U.S. 936, 99 S.Ct. 1282, 59 L.Ed.2d 495 (1978).

While this continues as an element of search warrant review, the test has been fleshed out by later opinions addressing the goals of the warrant requirements. The first of these is to insure an adequate showing of probable cause. The second is to protect the privacy of innocent parties from mistaken execution of a defective warrant. *Bridges* at 562; *Haynes v. State*, 475 S.W.2d 739 (Tex.Cr.App.1971).

The present constitutional test in federal court is the same. *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757, 760 (1925); *United States v. Avarello*, 592 F.2d 1339, 1344 (5th Cir. 1979); *United States v. Darensbourg*, 520 F.2d 985, 988 (5th Cir. 1975); *United States v. Melancon*, 462 F.2d 82, 93–94 (5th Cir. 1972). If the warrant is sufficient to enable the executing officer to locate and identify the premises intended to be searched, and the deficiencies in the description do not give rise to a reasonable probability that mistaken execution will take place at an unintended site, then the warrant is valid.

The Appellant relies exclusively upon the opinion in *Ervin v. State*, 165 Tex.Cr.R. 391, 307 S.W.2d 955, 955–956 (1957), one of the eighteen cases noted above. In *Ervin*, the search warrant specified an address of "611 Ute, Lubbock, Texas, occupants unknown." In fact, the defendant's residence was not numbered—no 611 Ute existed. The site which might ultimately hold such a numbered structure was a vacant lot. The officers had relied on a prior arrest statement of the defendant that his address was 611 Ute. Nonetheless, the warrant was held invalid.

■ The facts in *Ervin* bear a striking, but superficial, resemblance to those of the present case. The distinction, however, is the same line of demarcation which separates the reversals and affirmances in the Texas warrant cases. In *Ervin*, there was no actual relationship, historical or otherwise, between the 611 Ute address and the premises searched. The earlier claim to that address by the defendant had been false. Only the officer previously acquainted with the defendant could have effectively located the premises he intended to search. This is not sufficient under the Texas and federal standards set out above. The warrant must be sufficient on its face to enable any executing officer to locate and distinguish the property, avoiding a reasonable probability of mistaken execution. The validity of the warrant cannot depend upon the individualized, supplementary knowledge of one officer.

A similar lack of relationship between the warrant address and the search site led to reversal in four other cases out of the eighteen mentioned above. In *Combs v. State*, 141 Tex.Cr.R. 476, 149 S.W.2d 971 (1941), the search warrant provided only a physical description of one semi-permanent tent dwelling, in an area containing numerous tents, along a specified highway. At trial, the executing officers confessed error in their descriptive affidavits. Nothing in the warrant would permit another officer from effectively tracing the intended search site.

In *Balch v. State*, 134 Tex.Cr.R. 327, 115 S.W.2d 676 (1938), the warrant identified the premises as "302 East Robbins Street, occupied by Bessie Armstrong." The searched premises were "304 Robbins Street, under the control of Bessie Armstrong Balch." The record revealed no explanation of the discrepancy, and no basis in the warrant for relating the averments to the actual search site.

In *Harrison v. State*, 149 Tex.Cr.R. 513, 196 S.W.2d 933 (1946), and *Rumfolo v. State*, 535 S.W.2d 16 (Tex.Civ.App.—Houston [14th Dist.]), *rev'd on other grounds*, 545 S.W.2d 752 (Tex.1976), the search warrants provided street numbers different from the houses actually searched. No evidence was presented to show why an officer would have reasonably proceeded to execute the warrants at the unspecified addresses.

By contrast, where the warrant on its face contained sufficient information to enable *any* executing officer to locate the intended site and avoid mistaken execution despite the discrepancies, the warrants have been consistently upheld in both the Texas cases and the federal cases cited above. This is true when the officer is able to follow the averments to the intended site without ever becoming cognizant of the technical discrepancy, as well as when the officer discovers the discrepancy in the course of execution and yet is able, from the warrant, to effectuate the intended search without a probability of mistaken intrusion upon an innocent third party.

In *Crumpton v. State*, 147 Tex.Cr.R. 54, 178 S.W.2d 273 (1944), the warrant specified "718 North 9th Street, Abilene, under the control of Willie Crumpton." During execution, the officers found two residences numbered 718, separated by a vacant lot. The officers relied upon the occupancy averment to select the correct house. The court held that if the warrant had contained a street number alone, the search would have been invalidated. The officers were, however, entitled to rely upon the descriptive portions of the warrant as a whole. The specificity as to the occupant of the intended search site was sufficient to properly focus the warrant and preserve the search.

In the present case, the continued occupancy of the intended search site by Appellant Olivas was confirmed prior to application for the warrant. As noted above, we may presume from the record that this occupancy was specified in the affidavit and the warrant. Defendant's Exhibit No. Three, which so graphically demonstrates the street number discrepancy, is a photograph of Appellant's mail box in front of the search site. It displays the name Olivas in letters as large as the street number. This would assist any officer executing the warrant, let alone Dodson, in identifying this trailer as the site intended. It would reduce the possibility of mistaken execution at one of the other four similar mobile homes in the neighborhood.

Later cases have continued to permit reliance on occupancy averments to overcome street name and street number discrepancies, if the warrant as a whole meets the test of ability to locate and avoid mistaken execution. In *Guzman v. State*, 508 S.W.2d 375, 377 (Tex.Cr.App.1974), the warrant described a white frame residence at 7307 Avenue L. The lot had two buildings, 7307 and 7309. The 7307 structure corresponded in number only to the warrant; 7309 matched in all other respects. The court upheld the search, stating that the officers were entitled to rely upon the warrant as a whole, including physical description and allegations of occupancy and control.

In *McCormick*, the warrant authorized a search of "the Cotton Club on Slaton Highway No. 84, in Lubbock." The record disclosed that there was only one Cotton Club in Lubbock. More significant, in terms of the present case, is the discussion of the warrant's street description. At the time of the search, the actual address was "Southwest Drive, Alternate 84." The affidavit and warrant were based on an earlier street description for the same location as "Highway 84 to Slaton." While not technically accurate at the time of the search, the description was held to be sufficient to enable the officers to identify the intended location and distinguish it from others in the city. *McCormick* at 308.

In *Rhodes*, a similar change of the street description for the intended search site took place prior to the application for the warrant. The warrant described the premises as "the first house northeast of 950 Washington Street." Six years earlier, Washington Street had been changed to Gilbert

Street. In all other respects, the premises matched the description in the warrant. The Court of Criminal Appeals upheld the search, particularly noting that the change in street name was a matter of common knowledge in the neighborhood. Many residents still referred to the location as Washington Street. The warrant description, coupled with this common knowledge, would have enabled any officer to locate the house and avoid mistaken execution. *Rhodes* at 396.

In the present case, the street name had remained the same, but ten months before the execution of the warrant, the numerical designations had been changed in a two-block section. Unlike the situation in *Ervin*, at the time of this Appellant's prior arrest his mobile home address had, in fact, been 1213D West Ada. To test the sufficiency of the warrant, we must eliminate the special knowledge of Detective Dodson, and consider whether any officer, exercising reasonable diligence, could locate the intended site, distinguish it from others in the community and avoid mistaken execution against an innocent third party. The inescapable conclusion is that the warrant survives such a test.

The hypothetical officer would proceed to the current 1200 block of West Ada. He would find two frame houses, 1211 and 1215. Between the two, he would find a vacant lot. Not only is the lot devoid of any mobile home, but an examination of Defense Exhibit 14 reveals a lot incapable of holding as many as four separate units, that is 1213A, 1213B, 1213C and *1213D.* Noting the discrepancy, the officer would no doubt inquire of the neighborhood residents as to 1213D. From the testimony, he would certainly be referred to 1307 West Ada—Appellant's address, the intended site and the actual site searched.

If the officer chose a less casual manner of clarification, he might approach the City Planning Department. Based on Mr. Kirkendoll's testimony, he would again be directed exclusively to the redesignated residence of the Appellant at 1307. Alternatively, he might check the U. S. Post Office,

Southwestern Bell Telephone Company, Pioneer Texas Electric Company, the school tax office, the Ector County Tax Office or the Odessa City Tax Department. Each of these had received notice of the change from 1213D to 1307 and would no doubt have properly redirected the executing officer.

The record also discloses that there was, at the time of the search, no other structure designated 1213D West Ada. *See: Johnson v. State,* 469 S.W.2d 581 (Tex.Cr.App.1971) (warrant for Bettina Street instead of actual Bettina Court); *Ex parte Flores,* 452 S.W.2d 443 (Tex.Cr.App.1970).

Once the officer had been redirected to 1307 West Ada, he would observe a mobile home matching the physical description contained in the warrant. He would also observe a mail box, bearing the name Olivas, again consistent with the affidavit and warrant.

Despite the variance between the warrant address and the new address for the same location, we conclude that the warrant was sufficient under long-standing state and federal principles. The information was sufficient to enable any officer, executing reasonable diligence, to locate the intended premises, distinguish it from others in the community and avoid mistaken, arbitrary intrusion into the privacy of other citizens.

In addition to the opinions and factual situations noted above, additional support for our conclusion is found in several recent federal cases. In *Melancon,* the Fifth Circuit Court of Appeals upheld a search warrant for P. O. Box 623 when the actual search site was "P. O. Box 622." In *United States v. Cotham,* 363 F.Supp. 851, 855 (W.D.Tex.1973), a search of P. O. Box 133 was approved despite a warrant description of "P. O. Box 113." In *Darensbourg, supra,* the court upheld the search of one apartment unit actually bearing a street address on July Street. The warrant had described the apartment office address, a separate building on Highland Street. *See also: Maxon v. State,* 507 S.W.2d 234, 235 (Tex. Cr.App.1974). In *Aravello, supra,* the

search warrant provided an accurate description of the premises but erroneously indicated that it was located in Dallas. The Fort Worth search was, nonetheless, upheld by the Fifth Circuit.

In the present case, the warrant was sufficient, despite the discrepancy. Ground of Error No. One is overruled.

■ Appellant's Ground of Error No. Two challenges the sufficiency of the evidence to support his conviction. Viewing the evidence in a light most favorable to the verdict, this contention is without merit. Detective Dodson testified that he observed the Appellant bend down and pick something up inside his fenced yard. He then exited the yard, bent down and buried an object in the vacant strip between the fence and the alley. Within one hour, Dodson had obtained the search warrant. During his absence, Officer Hopkins maintained surveillance of the digging site. He testified that no one approached the area prior to commencement of the search. The heroin was found buried at the spot where the Appellant was observed digging. Throughout the burial process, Appellant's mannerisms were characterized as nervous. During the search, his conduct suggested efforts to distract the attention of Detective Dodson whenever the latter came close to the heroin site.

In *Rodriguez v. State*, 496 S.W.2d 46, 47–48 (Tex.Cr.App.1973), the Court of Criminal Appeals affirmed another Odessa heroin conviction on virtually identical evidence. There being no basis for deviating from that reasonable application of the law to the facts, Ground of Error No. Two is overruled.

Appellant's final ground of error contends that the failure of the State to call two other officers who participated in the search should be treated as evidencing a reasonable doubt as to the sufficiency of the evidence of possession of the heroin.

He bases this contention on the rule set out in *Ramirez v. State*, 163 Tex.Cr.R. 109, 289 S.W.2d 251, 261 (1956). There, it was held that when the testimony relied upon by the State is weak and other valuable testimony is available which is not introduced by the State, such failure will constitute reasonable doubt of guilt.

The facts justifying the application of such a rule in *Ramirez* are not present here. Ramirez was charged with murder without malice. His intoxication at the time of the offense was an essential element of the case and was hotly contested. The doctor who treated Ramirez and drew a blood sample testified that, in his opinion, the defendant was not intoxicated. The toxicologist who tested the blood sample testified that Ramirez was intoxicated. The State failed to call two police officers who escorted Ramirez from the collision to the hospital.

■ In the present case, the State's evidence is not weak. There is no testimonial conflict on an issue basic to guilt. In fact, the State presented the best evidence available, that being the testimony of Detective Dodson. He was the primary participant in this investigation, from initial tip, through surveillance and search, to arrest. It was Dodson who actually found the heroin, marked it, and maintained custody until submission for laboratory analysis.

If Appellant wished to ferret out a possible conflict in evidence, it was incumbent upon him to utilize his own subpoena power to do so. The strength and consistency of the State's case does not justify application of the rule employed in *Ramirez*. Ground of Error No. Three is overruled.

The conviction is affirmed.