**Judy LINDLEY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 12–88–00063–CR.**

Court of Appeals of Texas,
Tyler.

Aug. 31, 1990.

Rehearing Denied Oct. 26, 1990.

Discretionary Review Granted
Jan. 30, 1991.

Clifton Holmes, Longview, for appellant.

C. Patrice Savage, David E. Moore, Longview, for appellee.

BILL BASS, Justice.

A jury found appellant guilty of the offense of engaging in organized criminal activity and assessed punishment at ninety-nine years of confinement in the Texas Department of Corrections and a $10,000 fine. Appellant brings eight points of error.

Appellant was tried with seven co-defendants. The evidence at trial showed that numerous law enforcement agencies were involved in an investigation conducted in Longview in 1986. As part of the investigation, appellant's apartment was under surveillance and the apartment telephone was wiretapped. After obtaining a search warrant, the officers searched the apartment and a black Chevrolet Camaro located in the apartment complex parking lot near the Lindley's residence. The officers found over three pounds of cocaine, drug paraphernalia, weapons, and marihuana in the apartment. From the vehicle, officers recovered a briefcase containing, among other things, spiral notebooks, papers with dates and cash amounts, maps of Florida, and an identification card for John Lindley. Appellant was indicted with thirty-two others for the offense of engaging in organized criminal activity. The State alleged that appellant, with the intent to participate in a combination, conspired to deliver cocaine.

■ In her fourth point of error, appellant contends the evidence obtained from the search of the automobile should have been excluded because the search warrant failed to particularly describe the automobile in violation of Tex.Code Crim.P. art. 18.04(2) (Vernon 1977).[1] Article 18.04(2) requires a search warrant to "identify, as near as may be, that which is to be seized and name or describe, as near as may be, the person, place, or thing to be searched" to be sufficient.

The search warrant in this case authorized a search "of the suspected place described in the affidavit." The affidavit described with particularity the apartment to be searched, but the only reference to the automobile in the affidavit was the following: "all vehicles known by Affiant to be under the care and control of John Harley Lindley and Judy Parrish Lindley." Nowhere in the affidavit are these vehicles further described.

---

1. Since the appellant objected on state statutory grounds the *Leon* good faith exception has no applicability. *Polk v. State,* 704 S.W.2d 929 (Tex.App.—Dallas 1986), *aff'd,* 738 S.W.2d 274.

Furthermore, the new Texas statutory good faith exception is not applicable since the search occurred prior to the effective date of the amendment. Tex.Code Crim.P. art. 38.23.

■ A search warrant must describe the location to be searched in sufficient detail to enable the searching officer to distinguish it from other places. *Etchieson v. State*, 574 S.W.2d 753, 759 (Tex.Cr. App.1978), *cert. denied*, 440 U.S. 936, 99 S.Ct. 1282, 59 L.Ed.2d 495 (1979). When a warrant exists to search fixed premises, it is necessary for the affidavit to contain a particular description of vehicles to be searched. *State v. Barnett*, 788 S.W.2d 572 (Tex.Cr.App.1990). "This critical particularity requirement assures the magistrate that the vehicles described are those for which there is cause to search. Moreover, it precludes governmental intrusion into vehicles of visitors or other travelers who may have unwittingly moved or parked their cars in an area being scanned for contraband." *Barnett*, 788 S.W.2d at 574.

■ The state argues that because the police officers had performed surveillance they had personal knowledge of which cars were under control of the Lindleys. However, the warrant must be sufficient on its face to enable *any* executing officer to locate and distinguish the property and cannot depend upon the individualized, supplementary knowledge of one officer. *Olivas v. State*, 631 S.W.2d 553, 556 (Tex. App.—El Paso 1982, no pet.). An officer unfamiliar with the prior investigation could not have determined from the affidavit which cars were to be searched.

The State, relying on *Olivas*, contends that the warrant was sufficient because the officers could have determined that the black Camaro was the car to search by referring to extraneous sources (e.g., the apartment manager, a license check, or other officers familiar with the investigation). However, *Olivas* is distinguishable in that *Olivas* involved a search warrant that contained a facially sufficient description that proved to be partially erroneous. In the case before us, no physical description of the vehicle was given. The only information concerned who operated the cars.

We hold that the evidence recovered from the search of the automobile should not have been admitted into evidence be-cause the search warrant failed to comply with TEX.CODE CRIM.P. art. 18.04.

■ Next, we consider whether the introduction of the evidence from the automobile resulted in reversible error. TEX. R.APP.P. 81(b)(2) states: "If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." Recently, the Court of Criminal Appeals has thoroughly discussed the principles an appellate court should follow when engaging in an 81(b)(2) analysis:

> [T]he court should examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. Further, the court should consider how much weight a juror would probably place upon the error. In addition, the Court must also determine whether declaring the error harmless would encourage the State to repeat it with impunity. In summary, the reviewing court should focus not on the weight of the other evidence of guilty, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making; it should ask not whether the jury reached the correct result, but rather whether the jurors were able properly to apply law to facts in order to reach a verdict. Consequently, the reviewing court must focus upon the process and not on the result. In other words, a reviewing court must always examine whether the trial was an essentially fair one. If the error was of a magnitude that it disrupted the juror's orderly evaluation of the evidence, no matter how overwhelming it might have been, then the conviction is tainted.

*Harris v. State*, 790 S.W.2d 568 (Tex.Cr. App.1989).

The State's strategy in the case was to show that the combination involved a wholesaler-retailer relationship in illicit distribution of drugs, with John and Judy Lindley being the wholesalers of the orga-

nization. The notebooks recovered from the illegal search of the automobile were an integral part of the evidence. The majority of the State's evidence came from the wiretap of the Lindley's apartment, surveillance of the Lindley's apartment, and from the notebooks kept by the Lindleys.

The surveillance and wiretap evidence showed numerous contacts between the Lindleys and other members of the combination. However, these contacts were not necessarily indicative of criminal activity. This evidence showed that people entered and exited the Lindley's apartment at various times of the day and night. The wiretap revealed that numerous members were in contact with the Lindleys and other members of the combination, and that John Lindley had a "working relationship" with a few of the members. Many of the conversations involved making arrangements to meet each other, to collect money owed to the Lindleys, or to deliver items. Oftentimes, the object of these transactions were either not referred to at all or referred to with code words, such as "cases of champagne," or "fruits and vegetables."

However, the notebooks had a major impact on the evidence because the notebooks tied together the purpose of the visits and telephone calls. The notebooks contained information regarding the different drug transactions among the members of the combination. The documentation showed the amount of each purchase, the time of the purchase, and the time of payment. These purchases corresponded with the surveillance and wire intercept information placing certain members of the combination at the Lindley's apartment for the purpose of criminal activity.

There was expert testimony that most of the handwriting in the notebooks belonged to Judy Lindley. There was also expert testimony to the effect that by reviewing these notebooks it was possible to determine that the purchases were made for resale, and not for personal consumption.

The notebooks were essential in documenting the nature and scale of the narcotics transactions between Lindley and the other participants in the combination.

They were crucial in explaining the purpose of the visits and telephone calls, as well as explaining what the individuals were purchasing from the Lindleys or what they owed the Lindleys money for.

The notebooks contributed significantly to the credibility of surveillance testimony. The veracity of some of the typed surveillance reports was questioned when it was revealed at trial that identifications of individuals in the original surveillance reports were changed when the reports were typed. However, when the notebooks substantiated that a particular individual was at the Lindley's apartment at a certain time, the notebooks added credibility to the typed surveillance reports.

After careful review of all the evidence, and an 81(b)(2) analysis, we cannot say that beyond a reasonable doubt the error made no contribution to the conviction. Appellant's fourth point of error is sustained.

■ In her second point of error, appellant contends that the trial court erred in overruling her special plea of double jeopardy. She argues that the "aggravated possession of cocaine with intent to deliver," for which she was convicted in the prior case, was a necessary element of the organized criminal activity allegations of "conspiracy to deliver cocaine" with which she was charged in the instant case. *Citing, Ex parte Peterson*, 738 S.W.2d 688 (Tex.Cr.App.1987); *May v. State*, 726 S.W.2d 573 (Tex.Cr.App.1987).

The indictment in the prior cause charged, in pertinent part:

> that Judy Lindley ... on or about 12 September 1986, ... did then and there intentionally possess with intent to deliver a controlled substance in penalty group #1 ... namely cocaine, of at least 400 grams....

The indictment in the instant case alleged in part, as follows:

> [T]hat on or about the 3rd day of September, A.D. 1986, and continuing until on or about the 12th day of September, A.D. 1986 ... Judy Lindley ... did then and there with the intent to establish, maintain and participate in a combina-

tion, knowingly and intentionally conspire to commit the offense of unlawful delivery of a controlled substance listed in penalty group 1, to wit: cocaine....

Three separate protections are embraced by the Double Jeopardy Clause. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

"[E]ach protection requires a court to focus on different factors in determining the extent of the constitutional protection." *January v. State*, 695 S.W.2d 215, 220 (Tex.App.—Corpus Christi 1985). The tests for establishing what is the "same offense" under one guarantee will not necessarily serve in determining the scope of the two other protections. *Id.*

Lindley was convicted in the first prosecution. Her subsequent prosecution is not barred by the first protection, nor is it barred under the related doctrine of collateral estoppel, because the jury's general verdict of guilty of the offense charged in the first prosecution can have resolved no issue in Lindley's favor upon which the State must rely in the second prosecution.

Customarily, the analysis to determine if a subsequent prosecution is barred by the Double Jeopardy Clause begins with the application of the test in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *Blockburger* requires as comparison of the elements of the two crimes. If each of the two offenses requires proof of a fact which the other does not, then they are sufficiently distinguishable to permit the imposition of cumulative punishment. *Id.* at 304, 52 S.Ct. at 182. The appellant in *Blockburger* challenged the trial court's imposition of multiple punishments imposed in a single prosecution. Although the test was devised as a rule of statutory construction employed in determining whether the legislature intended multiple punishments, *Missouri v. Hunter*, 459 U.S. 359, 366, 103

S.Ct. 673, 678, 74 L.Ed.2d 535 (1983), if the two offenses are the "same offense" under *Blockburger* so as to prevent multiple sentences at a single trial, "they [are] necessarily the same for purposes of barring successive prosecutions." *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Lindley's prosecution is not barred under *Blockburger*, because the prior offense of which she has been convicted, possession of cocaine with intent to distribute, and the instant offense, engaging in organized criminal activity, each requires proof of a fact that the other does not. But although *Blockburger* is adequate to vindicate the Jeopardy Clause's guarantee against multiple punishments, it is not a sufficient definition of "same offense" for the purpose of securing the constitutional guarantee against multiple trials for the same offense. In *Brown v. Ohio*, 432 U.S. 161, 166–167, 97 S.Ct. 2221, 2225–26, 53 L.Ed.2d 187 (1977), the United States Supreme Court stated:

> The *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first.

In the case of prior acquittal (or conviction of a lesser included offense), *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), set out a standard prohibiting a second prosecution requiring relitigation of factual issues necessarily resolved in the defendant's favor in the first.

However, a test for determining what circumstances should bar a prosecution subsequent to a prior conviction arising out of the same events proved elusive until the United States Supreme Court's recent decision in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

Corbin's auto struck oncoming vehicles on a New York highway causing the death of one person and injury to another. Cor-

bin was charged and pleaded guilty to two misdemeanors, driving while intoxicated, and failing to keep to the right of the median. Subsequently, he was indicted on the same facts, the indictment charging him with reckless manslaughter, criminally negligent homicide, and third degree reckless assault. A bill of particulars accompanying the indictment set out the negligent acts upon which the State intended to rely to prove the charges: (1) operating a motor vehicle on a public highway in an intoxicated condition; (2) failing to keep right of the median; and (3) driving at a speed too fast for weather and road conditions. The Supreme Court affirmed the decision of the New York Court of Appeals holding that:

> [T]he Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

*Grady v. Corbin,* 110 S.Ct. at 2087.

The resolution of the issue in *Grady v. Corbin* was foreshadowed by the Supreme Court's "pointed dictum" in *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), in which a motorist who had caused a fatal accident was first convicted of unlawful failure to reduce speed, and later charged with involuntary manslaughter. The Supreme Court reversed the lower court's determination that the second prosecution was barred by the *Blockburger* test, because each statute contained an element that the other did not. But Justice White, writing for the court, went on to observe that if the State, in its prosecution of the manslaughter charge, found it necessary to prove conduct necessarily involving "the failure to control speed" to establish an essential element of the second crime, then "his [Vitale's] claim

of double jeopardy would be substantial under *Brown v. Ohio* (citations omitted)." *Vitale,* 447 U.S. at 421, 100 S.Ct. at 2267.

Prior to the decision of the United States Supreme Court in *Grady v. Corbin,* our Court of Criminal Appeals relied upon *Vitale* in holding a subsequent prosecution barred in *May v. State,* 726 S.W.2d 573 (Tex.Cr.App.1987), and *Ex parte Peterson,* 738 S.W.2d 688 (1987), because the appellant in each case had already been convicted for conduct that was shown to be a necessary element of the second crime charged. *May* involved a DWI prosecution subsequent to an involuntary manslaughter arising out of the same automobile accident, while the indictment in *Peterson* charged the defendant with involuntary manslaughter following his prior conviction of DWI on the same facts.

The holdings of the Court of Criminal Appeals in *May* and *Peterson,* cited by appellant, are consistent with the rule presaged in *Vitale* and announced in *Grady v. Corbin.*

In the instant case, it is plain that the State, in prosecuting the indictment for engaging in organized criminal activity to distribute cocaine between September 3, 1986, and September 12, 1986, relied on proof of Lindley's possession of cocaine with intent to distribute on or about September 12, 1986. In proving that the Lindleys were the hub of an organized criminal enterprise to distribute cocaine during the time alleged, the State necessarily relitigated Lindley's possession of cocaine with intent to distribute, conduct for which she had already been convicted. The second prosecution therefore violated her right not to be placed in jeopardy twice for the same offense.[2] The point of error is sustained.

---

**2.** A long line of cases hold that multiple punishments may be imposed upon a defendant in a single proceeding for both the conspiracy and the completed offense that was the object of the conspiracy. *See Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 1289–90, 43 L.Ed.2d 616 (1975); *Callanan v. United States,* 364 U.S. 587, 595, 81 S.Ct. 321, 325–26, 5 L.Ed.2d 312 (1961); *Pereira v. United States,* 347 U.S. 1, 11,

74 S.Ct. 358, 364, 98 L.Ed. 435 (1954); *Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 1181–82, 90 L.Ed. 1489 (1946); and *United States v. Rabinowich,* 238 U.S. 78, 88, 35 S.Ct. 682, 684–85, 59 L.Ed. 1211. However, the instant case presents the issue of successive prosecutions, not cumulative punishments, and as we read the rule in *Grady v. Corbin,* it admits of no exception in such a case.

The judgment of the trial court is reversed and an acquittal ordered.