OPINION




No. 04-01-00789-CR



Larry HARGROVE,


Appellant



v.



The STATE of Texas,


Appellee



From the 399th Judicial District Court, Bexar County, Texas 


Trial Court No. 2000-CR-2594-B


Honorable Juanita Vasquez-Gardner, Judge Presiding



Opinion by: Paul W. Green, Justice


Sitting: Catherine Stone, Justice

 Paul W. Green, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: June 18, 2003 


AFFIRMED

 Appellant Larry Hargrove was arrested for possession of cocaine with the intent to
deliver less than four grams. He subsequently filed a motion to suppress and a motion to
dismiss his case for lack of a speedy trial. Following a hearing, the trial court denied both
motions. Hargrove then pled no contest and was sentenced to five years' imprisonment and
a $1000 fine. Hargrove now appeals the trial court's denial of his motions in two issues.

Background

 On November 25, 1997, Detective Paul Battaglia and other members of the Alamo
Area Narcotics Task Force executed a search warrant on 611 I Street, the residence of
Appellant Larry Hargrove. The search warrant listed the property to be searched as 613 I
Street, the duplex unit adjoining Hargrove's residence, but described the unit in which
Hargrove lived. Subsequent to the search, Hargrove was arrested for possession with intent
to deliver a controlled substance.

 Hargrove's case was rejected by the District Attorney's office in January of 1998
because of a missing lab report. Det. Battaglia resent the lab report in April of 1998. When
he had not heard from the District Attorney's office regarding Hargrove's case by October
of 1999, Det. Battaglia resent the entire case file. Hargrove was finally indicted in May of
2000.

 In March of 2001, Hargrove filed a motion to suppress physical evidence based on
the insufficient property description in the search warrant. He also filed a motion to dismiss
his case for lack of a speedy trial. The trial court denied both motions and Hargrove now
appeals.



Motion to Suppress

 In his first issue, Hargrove contends the trial court erred in denying his motion to
suppress. Motions to suppress are subject to a bifurcated standard of review. Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). In reviewing the trial court's ruling
on a motion to suppress, we afford deference to the trial court's determination of the
historical facts and rulings on mixed questions of law and fact if the resolution of those
questions turns upon the credibility and demeanor of witnesses. Guzman v. State, 955
S.W.2d 85, 87-88 (Tex. Crim. App. 1997); Morfin v. State, 34 S.W.3d 664, 666 (Tex.
App.--San Antonio 2000, no pet.). Appellate courts are not at liberty to disturb the trial
court's findings of fact as long as they are supported by the record. However, we decide de
novo whether the trial court erred in misapplying the law to the facts. Carmouche, 10
S.W.3d at 327; Guzman, 955 S.W.2d at 87-88; Morfin, 34 S.W.3d at 666.

 Hargrove's written motion to suppress attacks the sufficiency of the search warrant
Detective Paul Battaglia used to enter and search Hargrove's duplex unit. He argues the
description of the property is not sufficient because the warrant lists the duplex unit to be
searched as 613 I Street rather than 611 I Street, Hargrove's actual address. 

 The test for determining the sufficiency of a search warrant's description of the place
to be searched is whether the description of the place to be searched is sufficient to apprise
the police of where they are to conduct the search. Haynes v. State, 475 S.W.2d 739, 740
(Tex. Crim. App. 1972); Mansell v. State, 756 S.W.2d 95, 98 (Tex. App.--San Antonio
1988, writ ref'd). Where the warrant describes a multiunit dwelling, the description must
contain sufficient guidelines to apprise the officers executing that warrant of the particular
unit to be searched. Haynes, 475 S.W.2d at 740-41; Mansell, 756 S.W.2d at 98. In addition,
it should be noted that an incorrect numerical standing alone will not automatically defeat
a search warrant. See Olivas v. State, 631 S.W.2d 553 (Tex. App.--El Paso 1982, no writ).

 It is also well settled law in Texas that the description contained in the affidavit limits
and controls the description contained in the warrant. Madrid v. State, 595 S.W.2d 106, 107
(Tex. Crim. App. 1979); Rios v. State, 901 S.W.2d 704, 706 (Tex. App.--San Antonio 1995,
no writ). The warrant and the attached affidavit should be considered together as defining
the place to be searched, but the description in the affidavit controls over the language of the
warrant itself. Riojas v. State, 530 S.W.2d 298, 303 (Tex. Crim. App. 1975); Rios, 901
S.W.2d at 706. When the affidavit is made a part of the warrant, the description of the
premises contained in the affidavit can be used to aid the description found in the warrant.
Phenix v. State, 488 S.W.2d 759, 764 (Tex. Crim. App. 1973); Rios, 901 S.W.2d at 706. 

 The warrant in question described the residence to be searched as a "single story
duplex residence, tan with turquoise, ...the residence on the left side as one faces it from the
street with the front door perpendicular to the street and facing east located at and known as
and numbered as 613 "I" Street..." In addition, Det. Battaglia, who was both the affiant and
executing officer, stated that the informant had pointed out the apartment to him and that he
had visited the apartment himself and was unable to obtain an apartment number from any
source in spite of the accurate description of the residence laid out above. 

 The primary purpose of the limiting words of the Fourth Amendment to the United
States constitution and art. I, § 9 of the Texas Constitution, that the place to be searched must
be particularly described, is to minimize the risk that officers executing search warrants will
by mistake search a place other than the place intended. In keeping with this purpose, we
find that is was readily apparent from the warrant, read in conjunction with the affidavit,
which unit of the duplex was to be searched. Hargrove's first issue is overruled.

Motion to Dismiss for Lack of Speedy Trial 

 In his second issue, Hargrove argues the trial court erred in denying his motion to
dismiss for lack of a speedy trial. In determining whether a defendant's right to a speedy
trial has been violated, we balance four factors: (1) length of delay; (2) reason for the delay;
(3) assertion of the right; and (4) prejudice to the defendant resulting from the delay. Barker
v. Wingo, 407 U.S. 514, 530 (1972); Dragoo v. State, 96 S.W.3d 308, 313 (Tex. Crim. App.
2003); State v. Guerrero, ___S.W.3d ___(Tex. App.--San Antonio 2003, no pet.). The
conduct of both the State and the defendant must be weighed when balancing the four Barker
factors. Barker, 407 U.S. at 530; Dragoo, 96 S.W.3d at 313. Importantly, no single factor
is necessary or sufficient to find a speedy trial violation. Barker, 407 U.S. at 530; Dragoo,
96 S.W.3d at 313.

 In reviewing the trial court's ruling, we apply a bifurcated standard of review.
Zamorano v. State, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002). When using a bifurcated
standard of review, we employ an abuse of discretion standard for the factual components
and a de novo standard for the legal components fo the trial court's decision. Id. Because
Hargrove did not prevail on his speedy trial claim, we must presume the trial court resolved
any disputed fact issues in the State's favor and are required to defer to these implied
findings of fact that the record supports. See State v. Munoz, 991 S.W.2d 818, 821 (Tex.
Crim. App. 1999). 

Length of Delay

 In determining whether a defendant has been denied his right to a speedy trial, we
must first examine the length of the delay. Unless the delay is presumptively prejudicial, we
need not reach the other Barker factors. Barker, 407 U.S. at 530; Zamorano, 84 S.W.3d at
648-49. The length of delay necessary to invoke such an inquiry depends upon the
circumstances surrounding each case. Zamorano, 84 S.W.3d at 648-49. Once a defendant
demonstrates the time from accusation to trial has crossed the threshold dividing ordinary
from presumptively prejudicial delay, a court must then consider the extent to which that
delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.
Zamorano, 84 S.W.3d at 649. 

 The length of delay for speedy trial purposes is measured from the time the defendant
is arrested or formally accused. United States v. Marion, 404 U.S. 307, 313 (1971); Dragoo,
96 S.W.3d at 313. Generally, a delay of eight months is considered presumptively
prejudicial, triggering further analysis. State v. Rangel, 980 S.W.2d 840, 843 (Tex.
App.--San Antonio 1998, no pet.). 

 The evidence presented at the pre-trial hearing shows that Hargrove was arrested on
November 25, 1997. His case was rejected by the district attorney in January of 1998
because of a missing lab report. Although Det. Battaglia resent the missing lab report in
April of 1998 and the entire case file in October of 1999, an indictment against Hargrove was
not returned until May of 2000. Thus, the delay in this case was approximately 30 months.
The State argues the delay began at the time of Hargrove's indictment in May of 2000 and
extended to the date on which he filed his motion to dismiss, February 2, 2001. Even
assuming the State is correct in its calculations, the delay exceeds the presumptively
prejudicial period of eight months. This delay, therefore, is sufficient to trigger a complete
Barker inquiry. See Munoz, 991 S.W.2d at 822 (recognizing a 17 month delay as sufficient
to trigger consideration of other Barker factors). Consequently, this factor weighs in
Hargrove's favor.

Reason for Delay

 Looking at the second Barker factor, the State bears the burden of justifying the delay.
Rangel, 980 S.W.2d at 843. Courts assign different weights to different reasons for a delay.
Dragoo, 96 S.W.3d at 314. Neutral reasons, such as negligence or overcrowded dockets,
are weighed less heavily against the State. Zamorano, 84 S.W.3d at 649. "Although
negligence is to be weighed more lightly than deliberate intent to harm the accused's defense,
it still falls on the wrong side of the divide between acceptable and unacceptable reasons for
delaying a criminal prosecution once it has begun." Doggett v. United States, 505 U.S. 647,
657 (1992). When the record is silent regarding the reason for the delay, a court may
presume neither a deliberate attempt on the part of the State to prejudice the defense nor a
valid reason for the delay. Dragoo, 96 S.W.3d at 314. 

 At the hearing on Hargrove's motion to dismiss, the State offered no justification for
the 30 month delay in prosecuting Hargrove. In addition, the State's brief admits it bears the
burden and offers no justification for the delay. This factor, then, also weighs in favor of
Hargrove.

Assertion of the Right

 The third factor a court must consider is the defendant's assertion of his right to a
speedy trial. Munoz, 991 S.W.2d at 825. The defendant is responsible for asserting his right
to a speedy trial. Id. However, if the defendant fails to assert this right, it does not amount
to a waiver. Dragoo, 96 S.W.3d at 314. It simply makes it more difficult for the defendant
to prove he was denied a speedy trial. Id.

 The State argues that this factor should weigh against Hargrove because he attempted
to have the case dismissed rather than to actually obtain a speedy trial. The Court of
Criminal Appeals has found a defendant's motivation in asking for dismissal rather than a
prompt trial to be clearly relevant. Phillips v. State, 650 S.W.2d 396, 401 (Tex. Crim. App.
1983). Although asking only for a dismissal will not result in a waiver, each case must turn
on its own facts, and the particular relief a defendant seeks is but one factor to consider. Id.
 Because Hargrove failed to introduce any reason why a dismissal, rather than a speedy trial,
was in his best interest, we find this factor to weigh in favor of the State. 

Prejudice Resulting From the Delay

 The final Barker factor takes into account any prejudice suffered by the defendant as
a result of the delay. Dragoo, 96 S.W.3d at 315. The prejudice to the defendant is assessed
in light of the interests which the speedy trial right is designed to protect. Munoz, 991
S.W.2d at 826. These interests are: (1) preventing oppressive pretrial incarceration; (2)
minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the
defense will be impaired. Id. 

 The defendant has the burden to make some showing of prejudice, although a showing
of actual prejudice is not required. Id. When the defendant makes a prima facie showing
of prejudice, the State carries the burden of proving that the defendant "suffered no serious
prejudice beyond that which ensued from the ordinary and inevitable delay." Ex parte
McKenzie, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973).

 In his motion to dismiss, Hargrove mentioned the impairment of his ability to
"adequately prepare for trial and to locate (a) witness" who would have been beneficial to
his case. Hargrove, however, fails to introduce any evidence regarding exactly how he was
prejudiced. In addition, at the hearing on the motion to dismiss, Hargrove failed to present
evidence regarding any prejudice he suffered due to the delay. Neither did Hargrove
demonstrate any way in which the delay impaired his defense. Because Hargrove failed to
show prejudice, this factor also weighs in favor of the State.

 After balancing all four Barker factors, we find the sum of the evidence to weigh in
favor of the State. Because Hargrove failed to assert his right to a speedy trial until shortly
before trial, and because he did not introduce any evidence regarding prejudice against him
caused by the delay, we overrule his second issue. The judgment of the trial court is
affirmed.

 Paul W. Green, Justice


Do Not Publish