**Opinion filed April 12, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00318-CR
_____

## JOE BOB WOMACK, Appellant

## V.

## STATE OF TEXAS, Appellee

On Appeal from the 13th District Court

Navarro County, Texas

Trial Court Cause No. 32,781

### M E M O R A N D U M   O P I N I O N

A grand jury indicted Joe Bob Womack for the felony offense of possession of methamphetamine in an amount of four grams or more but less than 200 grams with the intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (West 2010). Womack filed a motion to suppress, challenging the search of his property. After a hearing, the trial court denied Womack's motion to suppress. Womack entered into a plea bargain agreement and pleaded guilty to the offense as charged in the indictment. The trial court convicted Womack and sentenced him to confinement in the Institutional Division of the Texas Department of Criminal

Justice for a term of fifteen years and certified Womack's right to appeal matters raised by written motion prior to trial. The trial court also entered findings of fact and conclusions of law. Womack appeals the trial court's denial of his motion to suppress. We affirm.

In a single issue, Womack contends that the trial court erred when it denied his motion to suppress because the search warrant failed to sufficiently describe the location to be searched. We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Because the trial court is the exclusive factfinder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche*, 10 S.W.3d at 327. We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 87. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Id.*

Article I, section 9 of the Texas Constitution provides that no warrant to search any place shall issue without describing the place "as near as may be." TEX. CONST. art. I, § 9; *see also* TEX. CODE CRIM. PROC. ANN. art. 18.04(2) (West 2005). Minor discrepancies in the description of the place to be searched will not vitiate a warrant if the description allows the executing officer to locate the property and distinguish it from other places in the community. *Etchieson v. State*, 574 S.W.2d 753, 759 (Tex. Crim. App. 1978).

In his affidavit for a search and arrest warrant, which was incorporated into the search warrant, Sergeant Clint Andrews of the Navarro County Sheriff's Office described the particular place to be searched in Navarro County as follows:

> Corsicana, Texas. Traveling West from Corsicana, Texas on West HWY 31 to the intersection of FM 2452 and HWY 31. At the intersection proceed South on FM 2452 approximately 2.4 Miles to the intersection of FM 2452 and SW CR 3120. Turn west on SW CR 3120 and take an immediate right into a gated driveway. The Structure appears to be unnumbered and is the first residence on the North side of SW CR 3120 after exiting from FM 2452. The residence is what appears to be a mobile type home and is white in color with a green tin roof and a wooden front porch down the south side to the residence facing SW CR 3120. Authority is also sought to search all vehicles and outbuildings on the premises.

Womack contends that there are multiple errors in this description and, thus, that the warrant did not sufficiently describe the place to be searched. First, Womack asserts that there is no road that intersects FM 2452 and travels to the west at 2.4 miles south of HWY 31. Second, Womack alleges that FM 2452 and SW CR 3120 never intersect, but that FM 2452 instead intersects with SW CR 3110. Third, Womack argues that even if a person were to turn west on SW CR 3110, an immediate right into a gated driveway would take the person to Corbet Water Supply Corporation's back storage area, not to Womack's residence. And fourth, Womack contends that his residence was not the first residence on the north side of the road.

There is no dispute that Womack's residence was actually on SW CR 3110, not SW CR 3120 as the affidavit for the search warrant described. At the suppression hearing, Sergeant Andrews testified that he used a county map to prepare his description for the affidavit. The county map was admitted into evidence. In relying on the map, Sergeant Andrews believed that SW CR 3120 intersected FM 2452 and, thus, he described the road that Womack lived on as SW CR 3120. The evidence at the suppression hearing showed that SW CR 3110 actually intersected FM 2452 and that SW CR 3120 split off SW CR 3110 one-half mile west of that intersection. However, the map could be read as either SW CR 3110 or 3120 intersecting FM 2452. The evidence also showed that the second "1" and "0" had partially peeled off the road sign for SW CR 3110 at the FM 2452 intersection.

As to whether SW CR 3110 intersected FM 2452 at 2.4 miles south of HWY 31, the affidavit provided that the intersection was "approximately 2.4 Miles" south of HWY 31, not exactly 2.4 miles south. Sergeant Andrews testified that, when he drove to the location, his odometer read 2.4 miles. Defense counsel's legal assistant, Kristi Jock, testified that she and defense counsel drove to the location twice and that, on the first drive, the odometer read 2.1 miles when they reached the intersection and it read 2.2 miles on the second drive. Investigator Jerry Putman testified that, when he drove to the intersection, his odometer read 2.3 miles. Thus, from the testimony at the suppression hearing, it appears that the intersection is "approximately 2.4 Miles" south of HWY 31.

Jock and Womack's father testified that the first gated driveway after turning off FM 2452 led to Corbet Water Supply. However, both agreed that the first gated driveway that led to a residence was the driveway that led to Womack's residence. Investigator Putman

3

testified that he thought that the gate to Corbet Water Supply was off FM 2452, not SW CR 3110. As to whether Womack's residence was the first residence, Womack's father testified that Robby Sheryl lived in the first residence, which was a white building with a brown roof located on the same property as Womack's residence. Sheryl occasionally stayed at this location when he came to do work in the area. His actual residence was in Waxahachie. Womack's father testified that the building that Sheryl stayed in did not match the description of the residence in the warrant affidavit.

The trial court entered the following pertinent findings of fact from the suppression hearing: (1) Sergeant Andrews personally observed the residence to be searched prior to drafting the affidavit and executing the search warrant; (2) although Sergeant Andrews described the physical appearance of the residence to be searched correctly, he placed an incorrect address on the affidavit, which was subsequently placed on the search warrant; (3) Sergeant Andrews used a county-generated map to obtain the address of the residence for the affidavit and search warrant; and (4) Sergeant Andrews learned of the incorrect address after the execution of the warrant. In addition, the trial court found the fact that the executing officer had been to the location prior to the drafting of the search warrant affidavit cured the technical defect of the incorrect address. The trial court also found that the search warrant's description of the place to be searched was sufficient to inform the officer of the place to be searched.

Several Texas courts of appeals have held that deficiencies in the description in the warrant or affidavit of the place to be searched may be cured by an officer's knowledge of the exact premises to be searched when the same police officer conducts the investigation, swears to the affidavit, and executes the search warrant. *See Rogers v. State*, 291 S.W.3d 148, 152–54 (Tex. App.—Texarkana 2009, pet. ref'd) (holding description of location to be searched was sufficient when officer had motel room under surveillance, had seen the confidential informant enter and leave the room, signed the affidavit, and was present to execute the search); *Taylor v. State*, 974 S.W.2d 851, 857 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (holding executing officer may rely upon personal knowledge to locate the property to be searched under certain circumstances); *Smith v. State*, 962 S.W.2d 178, 185 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (holding trial court was entitled to consider not only the description in the warrant but also the knowledge of the particular officers executing the search); *Jones v. State*, 914 S.W.2d 675,

4

678–79 (Tex. App.—Amarillo 1996, no pet.) (holding search warrant was adequate when taking into account executing officer's personal knowledge of place to be searched).

However, the Eighth and Twelfth Courts have held that the warrant must be sufficient to allow any officer to locate the place to be searched without relying on the supplementary knowledge of one officer. *See Olivas v. State*, 631 S.W.2d 553, 556 (Tex. App.—El Paso 1982, no pet.) ("The warrant must be sufficient on its face to enable any executing officer to locate and distinguish the property, avoiding a reasonable probability of mistaken execution. The validity of the warrant cannot depend upon the individualized, supplementary knowledge of one officer."); *Lindley v. State*, 855 S.W.2d 723, 725 (Tex. App.—Tyler 1990) (relying on *Olivas* to hold search warrant insufficient to allow any officer to locate car to be searched), *vacated and remanded on other grounds*, 838 S.W.2d 257 (Tex. Crim. App. 1992).

The Court of Criminal Appeals has relied on the executing officer's knowledge in determining whether the warrant sufficiently described the place to be searched. *See Bridges v. State*, 574 S.W.2d 560, 562 (Tex. Crim. App. [Panel Op.] 1978) (holding there was no reasonable probability that the officers would search any place other than the intended house when the executing officers observed the home before seeking the search warrant from the magistrate even though the city was not named in the warrant). However, the court has not expressly addressed whether the warrant must be sufficient on its face so that any officer can locate the property or whether the executing officer's personal knowledge of the property to be searched may be taken into consideration.

Because we find here that any officer could have located the property with the description in the warrant affidavit, it is not necessary for us to determine whether the executing officer's personal knowledge of the property may be considered. As discussed above, it is clear that there were discrepancies in the directions to the property to be searched; however, the description of the property itself was correct. Jock testified that, if you followed the directions in the affidavit, the only place you could get to was Womack's residence but that, if you were not familiar with the area, it would cause some difficulty. In addition, Investigator Putnam testified that, on the morning of the suppression hearing, the prosecutor gave him a copy of the warrant and affidavit and asked him to follow the directions in the affidavit to see if he could find the location described. Investigator Putnam was able to find the location described and testified that he had no knowledge of the case and was not in that area on a regular basis. Both Jock and

Investigator Putnam were able to locate the property by following the description in the warrant affidavit. Sergeant Andrews, Jock, and Womack's father all testified that Womack's residence was the only residence in the area that matched the physical description of the residence in the warrant affidavit, including those residences actually located on SW CR 3120. Therefore, there was no reasonable probability that an executing officer would have executed the search warrant at an unintended location. We hold that the description in the warrant affidavit was sufficient to allow any officer to locate the place to be searched. We overrule Womack's sole issue.

The judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


April 12, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.