**Ernest Eugene SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–96–01418–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 15, 1998.

Anthony Osso, Houston, for Appellant.

John B. Holmes, Dan McCrory, Houston, for Appellee.

Before COHEN, WILSON and HEDGES, JJ.

## OPINION

COHEN, Justice.

Appellant pleaded not guilty to possession of cocaine weighing between one and four grams, and not true to two prior felony convictions for possession of cocaine. The trial judge found him guilty, found one enhancement paragraph true, and assessed punishment of 16 years in prison. We affirm.

## FACTS

An informant told Officer MacNaul that a suspect named "Gene" sold cocaine from his house at 2400 Brooks Street. After confirming the location, MacNaul used the informant for a controlled buy. He saw the informant enter and leave the house. MacNaul then made an affidavit for and obtained a search and arrest warrant, which he executed the next day. Appellant was arrested in the house, and cocaine found there was used to obtain his conviction.

## POINTS OF ERROR

In his first point of error, appellant contends the search was illegal because the warrant did not accurately describe the premises, as required by TEX.CODE CRIM.P.ANN. art.

18.04(2) (Vernon 1981) and by U.S. Const. amend. IV and Tex. Const. art. 1, § 9. In his second point of error, appellant contends that Tex. Const. art. I, § 9, affords greater protection than the Fourth Amendment and "does not permit the consideration of supplemental knowledge. . . ." Specifically, appellant contends the trial judge erred by holding that the description errors in the warrant were cured because the same officer who conducted the investigation also executed the warrant, thus eliminating the possibility that the wrong house would be searched.

## THE GENERAL STANDARD OF REVIEW

■ At a suppression hearing, the trial judge is the sole judge of the credibility of the witnesses. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App.1991). He may believe or disbelieve any or all of any witness's testimony. *Id.*

■ A search warrant must describe the target location in sufficient detail that the officer can locate and distinguish it from other places in the community. *Etchieson v. State*, 574 S.W.2d 753, 759 (Tex.Crim.App. 1978). Minor discrepancies will not vitiate a warrant if it sufficiently describes the premises. *Id.*

## THE SEARCH WARRANT

The search warrant described the target residence as follows:

> 2400 Brooks, Houston, Harris County, Texas, more fully described as a one story white wood framed residence with black trim. This residence is positioned on the south side of Brooks facing north. The numbers are not visible on this structure. This target residence is located on the west side of the last residence positioned on the south side of Brooks Street. The nearest cross street is West Street to the west. Brooks Street dead ends to the east.

## FACTS FOUND AT TRIAL, ADMITTED AT TRIAL, AND ADMITTED ON APPEAL

Appellant contends the warrant was defective because it misstated the house's address and general location, and because the physical description[1] failed to differentiate it from other nearby houses. Appellant presented evidence supporting these allegations, and the record shows that the trial court judge was persuaded by that evidence.

Appellant contended the correct address for his house was not 2400 Brooks, as stated in the warrant, but 2417 New Orleans Street. He presented an electricity bill in his name for the address of 2417 New Orleans Street and an investigator's testimony that the house searched had the numbers 2417 on it and that its correct address was 2417 New Orleans. The investigator testified he could find no location whose address was 2400 Brooks, that if he had gone to the location described in the warrant, he would have been at 2406 Brooks, and that it took "not much" effort to determine the accurate address, 2417 New Orleans. The State conceded at trial that "there is actually no 2400 Brooks St.," but claimed this favored admitting the evidence because "there's no possibility that another house would be mistakenly searched."

Appellant's motion to suppress was heard simultaneously with his nonjury trial. After hearing all evidence, the judge heard legal arguments and engaged the attorneys in discussion. During these discussions, the judge stated:

> Address for me the issue of diligence on behalf of the police officer. Before we start allowing law enforcement to break into citizens' homes, so the street sign was lying on the ground, so there was a tree out there.[1] *The slightest amount of effort would have shown the correct address including the utility bills which are shown to be on Orleans Street or New Orleans Street and not on the street where the house was located. When do we stop allowing police officers just to break into*

---

1. This was a reference to State's evidence that the address was hard to determine because the street sign was on the ground and shrubbery interfered with the view.

*any house they want to without showing at least due diligence on their part?*

. . . .

Of course, the evidence does show us the real street number of the house was on the appropriate front of the house, not on the rear of the house that your officers saw.

In the context of this discussion, in which the parties were discussing whether the correct address was that in the warrant, 2400 Brooks, or that alleged by appellant, 2417 New Orleans, it is clear that the judge believed appellant's evidence that the correct address was 2417 New Orleans and resolved that issue in appellant's favor. On appeal, the State concedes that the warrant recites the wrong address.

Appellant also argued that while the warrant stated the street numbers on the house were not visible, the number 2417 was displayed over his front door, which faced New Orleans Street, not Brooks Street. The errors in the warrant were apparently due to Officer MacNaul's mistaken belief that the house faced Brooks Street, rather than New Orleans Street. MacNaul believed this because there was no barrier between the house and Brooks Street, there was a well worn path from the house to Brooks Street, and MacNaul had seen people entering the house from and departing toward Brooks Street. The trial judge, however, found that the house faced New Orleans Street. The judge's statement shows he believed that "2417" was visibly displayed on the front of appellant's house, *i.e.*, the side facing New Orleans Street.

Appellant also presented evidence that the warrant's description of the house "as a one-story white wood frame residence with black trim," although accurate, did not distinguish the house because all the houses nearby, "shotgun houses," met this description. The trial judge resolved this issue in appellant's favor, stating, "Every house on the street was a white house with black trim," and the prosecutor agreed.

Appellant finally contends that the warrant erroneously stated the house was facing north on Brooks Street, when, in fact, it faces

south on New Orleans Street. The trial judge's statements showed he resolved this issue in appellant's favor and believed that the house faced south on New Orleans Street. On appeal, the State concedes that the house faced south on New Orleans Street and that the warrant was wrong in that respect. .

Of the remaining description quoted below from the warrant, the following was correct:

1. The residence was "positioned on the south side of Brooks." However, it was "facing north," only if one believed, as Officer MacNaul mistakenly did, that the back door was the front door. The trial judge found that the rear of the house faced north, while the front faced south. Thus, the house faced south, although Officer Mac-Naul's error is easy to understand for reasons stated above.

2. The house was "located on the west side of the last residence positioned on the south side of Brooks Street," if one counts the "last residence" as the easternmost residence, as Officer MacNaul did.

3. "The nearest cross street is West Street to the west."

4. "Brooks Street dead ends to the east."

Thus, all the errors in the warrant, except one, flowed from MacNaul's mistaken belief that the back of the house was the front. The address error, 2400 Brooks, resulted from Officer MacNaul uncritically taking that statement as true from his confidential informant.

We have attached as an appendix a drawing showing the location of appellant's house in relation to Brooks Street, to New Orleans Street, and to other houses nearby.

## THE TRIAL JUDGE'S CONCLUSION OF LAW

The record thus establishes that the trial judge found the warrant contained errors that could have significantly impaired an officer executing the warrant from locating the house correctly.[2] Nevertheless, the trial

---

2. In this case, findings of fact were neither re-

quested nor filed. In deciding a motion to sup-

judge denied the motion to suppress, expressly citing and relying exclusively on *United States v. Gordon,* 901 F.2d 48 (5th Cir.1990).

In *Gordon,* the court held that a search conducted under a warrant containing a wrong address was valid. 901 F.2d at 50. In upholding the search, the *Gordon* court considered evidence outside the warrant that arose after the warrant was issued, *i.e.,* that the officer who executed the warrant had previously investigated the location and signed the affidavit. *Id.* at 50; *accord Jones v. State,* 914 S.W.2d 675, 678 (Tex.App.—Amarillo 1996, no pet.) (following *Gordon* ). The Fifth Circuit held that even though the warrant might have led other officers to the wrong house, there was no possibility of mistake there because the officer executing the warrant knew from his investigation—not from the warrant—exactly which house to search. *Gordon,* 901 F.2d at 50. The *Gordon* court relied on a number of other facts and factors that are also present here. For example, the erroneous address on the warrant in *Gordon* did not actually exist. That fact supported affirmance, the court concluded, because "there was no possibility that the wrongly noted location could have been searched." *Id.* at 50 n. 3. Moreover, the court relied on several other facts, also present here, to conclude there was no evidence of bad faith. First, the warrant was not invalid on its face. The defect would be apparent only to one who knew the correct address, which was obviously not common knowledge. *Id.* at 50. Second, only one location—the intended location—was searched. *Id.* Finally, it "obviously could not serve any law enforcement, or other, purpose to intentionally state a nonexistent address on a warrant plainly intended to be executed at the specific place it was executed and for which there was probable cause to search." *Id.*

## THE PARTICULAR STANDARD OF REVIEW, OR IS *GORDON* CONTRARY TO TEXAS LAW?

### A. The Conflicting Authorities

There are two conflicting lines of authority that affect the disposition of this case. One would lead to reversal. It consists of four recent court of appeals decisions, backed by several older Court of Criminal Appeals decisions. These cases hold that the description is good or bad based on the warrant alone, and description errors cannot be cured by the fact that the officer executing the warrant knew, not solely from the warrant but also from his investigation, which house to search and searched only that house. These cases hold that the warrant, on its face, must describe the premises sufficiently to allow *any* officer to locate and distinguish the property, thus avoiding the risk of mistaken execution.

Another line of cases, supported by more recent authority from the Court of Criminal Appeals, the federal courts of appeals, and several Texas courts of appeals, holds the opposite. They hold that description errors are cured if, despite the erroneous description, the officer who executed the warrant actually knew, based on his investigation, which house to search and searched only that house. They hold that the officer's personal knowledge can cure the description errors because it eliminates the risk that the wrong premises will be searched.

These two lines of authority cannot be reconciled, at least by us. If we follow the first, we will reverse. If we follow the second, we will affirm. Given the importance of the issue, its dispositive effect on this case,

press, a judge has no duty to file findings of fact, even upon request. However, when the record plainly shows what facts a judge believed and found and also what legal theories he employed, Texas and federal appellate courts reviewing Texas criminal convictions have accepted the judge's oral statement concerning the facts he found, and they have conducted their appellate review based on these facts. *See Ex parte Tarver,* 695 S.W.2d 344, 345 (Tex.App.—Houston [1st Dist.] 1985), *affirmed,* 725 S.W.2d 195, 196, 198, 200

(Tex.Crim.App.1986); *see also Childress v. State,* 845 S.W.2d 377, 380, 381, 384 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd) (Cohen J., dissenting), *judgment vacated sub nom. Childress v. Johnson,* 103 F.3d 1221, 1224, 1225–26 (5th Cir. 1997) (granting "a high measure of deference" to state trial judge's oral statements showing what facts he believed). Here, as in *Tarver* and *Childress,* the trial judge's statements show what facts he found to be true.

the considerable authorities on both sides, and the apparent absence of recognition of any conflict in the cases, we will set out the conflict in detail.

### B. Cases Holding That Courts Cannot Consider the Executing Officer's Personal Knowledge to Cure Description Errors or Omissions in the Warrant

When a warrant does not state who resided in the targeted premises, that omission cannot be cured by evidence outside the warrant that the executing officer knew, in fact, that the defendant resided there. *Miller v. State,* 134 Tex.Crim. 118, 114 S.W.2d 244, 246 (1938). In *Miller,* the warrant did not state that Mr. Miller lived in the "certain private dwelling" to be searched. *Id.* The court stated:

> It is true the officers testified that they knew the house searched was appellant's residence, but such testimony would not supply the omission of such averment in the description of the property in the affidavit and warrant.

*Id.; accord Ervin v. State,* 165 Tex.Crim. 391, 307 S.W.2d 955, 956 (1957) (trial testimony that house belonged to appellant was not available to aid the description in the warrant).[3]

A search warrant must be sufficient on its face to enable *"any"* officer, not just the officer who conducted the investigation, to locate and distinguish the property, thus avoiding a reasonable probability of mistaken execution. *Olivas v. State,* 631 S.W.2d 553, 556 (Tex.App.—El Paso 1982, no pet.) (emphasis in original); *accord Lindley v. State,* 855 S.W.2d 723, 725 (Tex.App.—Tyler 1990), *vacated and remanded on other grounds,* 838 S.W.2d 257 (Tex.Crim.App.1992);[4] *Mason v. State,* 838 S.W.2d 657, 660 (Tex.App.—Corpus Christi 1992, pet. ref'd); *Williams v. State,* 928 S.W.2d 752, 754 (Tex.App.—Hous-

ton [14th Dist.] 1996, *pet. granted on other grounds* ).

In *Olivas,* the court stated:

> For many years, the Texas test for the sufficiency of the description was whether *the officer executing the warrant* could, with reasonable effort, locate the premises and distinguish it from others in the community.
>
> While this continues as an element of search warrant review, the test has been fleshed out by later opinions addressing the goals of the warrant requirements. The first of these is to insure an adequate showing of probable cause. The second is to protect the privacy of innocent parties from mistaken execution of a defective warrant.
>
> The present constitutional test in federal court is the same. If the warrant is sufficient to *enable the executing officer to locate and identify the premises* intended to be searched, and the deficiencies in the description do not give rise to a reasonable probability that mistaken execution will take place at an unintended site, *then the warrant is valid.*

631 S.W.2d at 556 (emphasis added) (citations omitted).

The *Olivas* court went on, however, to hold emphatically that the executing officer must be able to identify the premises from the warrant alone, not from his knowledge outside the warrant based on his prior investigation. In distinguishing a different case, the *Olivas* court stated:

> Only the officer previously acquainted with the defendant could have effectively located the premises he intended to search. This is not sufficient under the Texas and federal standard set out above. The warrant must be sufficient on its face to enable *any* executing officer to locate and distinguish the property, avoiding a reasonable probability of mistaken execution. *The va-*

---

**3.** Here, unlike in *Miller* and *Ervin,* the affidavit, which was incorporated in the warrant, stated that "Gene" controlled the premises. In *Ervin,* the court stated, "Had the warrant and affidavit alleged that appellant occupied the premises a different rule might well be applied." 307 S.W.2d at 956.

**4.** On remand, the Tyler court adhered to its original holding on the search issue. *Lindley v. State,* 855 S.W.2d 729, 731 (Tex.App.—Tyler 1993, no pet.).

*lidity of the warrant cannot depend on the individualized supplementary knowledge of one officer.*

631 S.W.2d at 556 (emphasis added).

The *Olivas* court emphasized its holding that the executing officer's personal knowledge outside the warrant must not be considered. It did so by referring to "the hypothetical officer," by referring to *"any executing officer"* (emphasis in original), and by stating that the officer must be able to identify the house "from the warrant." *Id.* at 557–58. The court then applied that holding as follows:

> To test the sufficiency of the warrant, *we must eliminate the special knowledge of Detective Dodson,* and consider whether *any* officer, exercising reasonable diligence, could locate the intended site, distinguish it from others in the community and avoid mistaken execution against an innocent third party.

*Id.* at 558 (emphasis added).

The principles stated in *Olivas* and the intermediate court holdings following it, *Williams, Mason,* and *Lindley,* as well as the Court of Criminal Appeals holdings in *Ervin* and *Miller,* are consistent with general principles of search and seizure law used to decide whether there was probable cause to search. For example, probable cause must be stated within the four corners of the affidavit, not supplied by information outside the affidavit but within the affiant's knowledge. *McFarland v. State,* 928 S.W.2d 482, 509 n. 26, 510 (Tex.Crim.App.1996) ("We must ignore ... assertions ... that are based on evidence outside the affidavit."); *Jones v. State,* 568 S.W.2d 847, 855 n. 9 (Tex.Crim.App.1978). A search warrant is good or bad when issued. *Byars v. United States,* 273 U.S. 28, 29, 47 S.Ct. 248, 248, 71 L.Ed. 520 (1927). It cannot be justified by what the search produces. *Id.; Brown v. State,* 481 S.W.2d 106, 112 (Tex.Crim.App. 1972) (warrantless search); *Ker v. California,* 374 U.S. 23, 40, 83 S.Ct. 1623, 1633 n. 12, 10 L.Ed.2d 726 (1963). Thus, it is not surprising that *Olivas et al.* would hold that a warrant's validity cannot depend on who executed it, *i.e.,* the description in the warrant cannot be good if executed by one officer but

bad if executed by another. *Olivas,* 631 S.W.2d at 556–58.

All of the cases cited in the previous paragraph, as well as many others on the same point, deal with whether there was probable cause to search. The law is well established that probable cause to search must be contained in the affidavit for the search warrant and cannot be supplied from any other source. We do not hold to the contrary. That is not an issue in this case. The issue here is whether the description of the place to be searched was sufficiently specific. As set out next, courts have adopted a different approach to that issue.

## C. Cases Holding That a Court May Consider the Executing Officer's Personal Knowledge of the Location to Be Searched to Cure Description Errors in the Warrant

One court of appeals has expressly followed the holding in *Gordon,* observing that the same rule is followed in the the United States Court of Appeals for the Eighth, Ninth, and Eleventh Circuits, and in Idaho, Kentucky, Louisiana, Massachusetts, Minnesota, and South Dakota. *Jones v. State,* 914 S.W.2d 675, 678 (Tex.App.—Amarillo 1996, no pet.). The *Jones* court emphasized that the officer who was the affiant also executed the warrant, that the informant had pointed out to him the specific location of the premises to be searched, and that the officers searched only the correct premises. *Id.* at 678–79.

Two other courts of appeals in decisions before *Gordon* used the same rationale as *Gordon* to uphold the searches, finding in each case that the officer's knowledge of the exact premises to be searched cured the description error. *Mansell v. State,* 756 S.W.2d 95, 97–98 (Tex.App.—San Antonio 1988, pet. ref'd) (emphasizing that the affiant also executed the warrant and the informant had pointed it out to him.); *Staines v. State,* 659 S.W.2d 50, 52 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd) ("We know of no rule which requires the informant or complainant to give a detailed description of the premises, especially where the premises may be personally observed by the affiant himself.")

Yet another court of appeals has cited *Olivas* for the proposition that a warrant is sufficient if it enables "the officer executing same"—not any officer—to locate the premises while avoiding a reasonable probability of mistaken execution. *State v. James*, 848 S.W.2d 258, 261 (Tex.App.—Beaumont 1993, no pet.).

We have found no Court of Criminal Appeals decision that prohibits a court from considering the executing officer's personal knowledge of the targeted location to cure description errors. We have found no Court of Criminal Appeals case requiring, as *Olivas* did, that the warrant's description of the premises be sufficient to allow "any" officer to locate the premises. On the contrary, many cases from the Court of Criminal Appeals state that the description is sufficient if "the officer"—not "any officer"—executing it can locate the premises. For example, "Where the warrant describes a multi-unit dwelling, the description therein must contain sufficient guidelines to apprise *the officers executing that warrant* of the particular unit to be searched." *Haynes v. State*, 475 S.W.2d 739, 741 (Tex.Crim.App.1971) (emphasis added); *see also Etchieson v. State*, 574 S.W.2d 753, 759 (Tex.Crim.App.1978); *Maxon v. State*, 507 S.W.2d 234, 235 (Tex.Crim.App.1974); *Smith v. State*, 478 S.W.2d 518, 521 (Tex.Crim.App.1972); *Ex parte Flores*, 452 S.W.2d 443, 444 (Tex.Crim.App. 1970); *Rhodes v. State*, 134 Tex.Crim. 553, 116 S.W.2d 395, 396 (1938).

Several Court of Criminal Appeals cases have applied the rule and specifically considered the personal knowledge of the particular officers executing the warrant. Two of those reversed upon finding that the warrant plus the knowledge of the executing officer was insufficient because in each case, before searching the right location, the officers first searched the premises of an innocent third party. *Morales v. State*, 640 S.W.2d 273, 275 (Tex.Crim.App.1982); *Aguirre v. State*, 109 Tex.Crim. 584, 7 S.W.2d 76, 77 (1928); *see also State v. Chavarria*, No. 01–96–01389–

CR, slip op. at 5–6, —— S.W.2d ——, ——– ——, 1997 WL 745751 (Tex.App.—Houston [1st Dist.] Nov.25, 1997, pet. filed)(affirming motion to suppress where police had never been to the targeted premises or had it pointed out to them, the description was seriously deficient, and there was no way for them to know if they were searching the targeted premises until after they had entered one of the two units of a duplex).[5]

After considering all of this conflicting law, general statements of principle, and specific applications, we conclude that the controlling case is *Bridges v. State*, 574 S.W.2d 560 (Tex.Crim.App.1978). The *Bridges* court considered the knowledge of the officers executing the warrant and used it to uphold the search. The court stated:

> Our law concerning search warrants has two goals: to ensure that there is adequate probable cause to search and to prevent the mistaken execution of the warrant against an innocent third party. This second goal is met when the warrant identifies the place to be searched sufficiently so that *the officers who execute the warrant,* acting as reasonable men, can locate that place and identify it from other places in the community. This goal is not furthered by rigid application of rules requiring a warrant to contain certain descriptive elements such as the name of the city.[6] Article 18.04, V.A.C.C.P., does not set forth a list of required descriptive elements. We are convinced that the rights of society and of the innocent third party can best be protected by evaluating each search warrant individually.

*Id.* at 562 (emphasis added).

The *Bridges* court then applied the above general rule to uphold the search, emphasizing that the police officers knew from their investigation exactly which house to search and in fact searched that house. The court stated:

> In the instant case, the appellant was arrested in his house. The police officers

---

5. In the instant case, the police had been to the premises, the informant pointed it out to them, and the house was not a duplex.

6. The appellant in *Bridges* contended the description was inadequate because it did not specify the town in which 2134 Hardy Street was located.

made observations which gave them probable cause to suspect physical evidence was present in the house. The officers took this information to a magistrate who issued a search warrant that described the house to be searched by its street address, color, type of construction, county and state. The officers then returned to that house, conducted a search and seized the complained of items. There was no reasonable probability that the officers would search any place other than the intended house. The warrant was sufficient.

*Id.* at 562.

■ The case at bar is similar. Officer MacNaul, who conducted the investigation and made the affidavit for this search warrant, had the house pointed out to him by a confidential informant, and he watched the informant enter and leave that house. Officer MacNaul was present to execute the warrant and searched one house only, which was the house intended and targeted for the search.

## CONCLUSION

We elect to follow the line of authority that includes *Bridges, Morales, Aguirre, Haynes, Maxon, Smith, Etchieson, Rhodes, Jones, Mansell, Staines,* and *Gordon.* We decline to follow *Miller, Ervin, Olivas, Lindley, Mason,* and *Williams.*

We hold that the trial judge was entitled to consider not only the description in the warrant but also the knowledge of the particular officers executing the search. The two, taken together, adequately describe the premises and are sufficient to prevent the mistaken execution of the warrant against an innocent third party. We conclude that *Gordon* is consistent with the greater weight and better reasoned authority of the Court of Criminal Appeals decisions. We doubt that the Court

of Criminal Appeals will approve the rule in *Olivas,* which requires that a warrant be able to direct any officer, even one completely ignorant of the investigation, to the place to be searched. We consider that requirement to be unnecessarily strict, in view of our judicial knowledge that it is a rare search warrant that would be executed in the total absence of every officer with knowledge of the underlying investigation.

■ We believe there is a good reason for courts to judge probable cause to search solely based on the affidavit. We also believe there is good reason for courts to consider evidence at the motion to suppress to determine whether the premises were adequately described. The facts claimed to show probable cause to search will be developed before the search. They will be known and, therefore, able to be stated in an affidavit, which a neutral magistrate can review and rule on. Generally, any errors in the description of the premises will not then be known to the police or the magistrate. The police may discover the error when they execute the warrant; the magistrate will not know until the motion to suppress. Thus, the risk of searching the wrong premises (much less the legal effect of such a search actually occurring) cannot then be determined. Consideration of those facts depends on something yet to occur—the execution of the warrant. A decision on whether the description was sufficient, therefore, must depend on evidence outside the warrant.[7]

All points of error are overruled.

The judgment is affirmed.

O'CONNOR, J., concurs from the vote denying en banc consideration.

NUCHIA, J., joins O'CONNOR'S, J., concurring opinion.

---

7. An exception might arise in the rare case where a magistrate, having personal knowledge of the targeted premises, can recognize the erroneous description based on the affidavit alone. The affidavit itself will not normally reveal its own erroneous description.

O'CONNOR, Justice, concurring from denial of en banc.

I write to voice my disagreement with the panel's opinion, an opinion that I believe to be important to the jurisprudence of the State.

The panel opinion struggles to compare two lines of authority and ultimately relies on a Fifth Circuit opinion to hold that the affiant-officer's testimony should be allowed to explain the error in the description of the house in the affidavit.

There is a shorter route to the same conclusion, and it starts with *U.S. v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon*, the Supreme Court modified the exclusionary rule to permit the government to introduce evidence in its case in chief that was seized by officers who acted in "objectively reasonable reliance" on a search warrant that ultimately is found to be unsup-

ported by probable cause. *Id.*, 468 U.S. at 922, 104 S.Ct. at 3420. The Court referred to this as the "good-faith exception." *Id.*, 468 U.S. at 924, 104 S.Ct. at 3421.

The Texas Legislature codified part of the holding of *Leon* by adding section (b) to Texas Code of Criminal Procedure article 38.23. article 38.23 provides:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. . . .

(b) It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in *objective good faith reliance* upon a warrant issued by a neutral magistrate based on probable cause.

TEX.CODE CRIM.P. art. 38.23 (1997) (emphasis added).[1]

Evidence obtained by a police officer acting in good faith reliance upon a warrant based upon a magistrate's determination of probable cause is not rendered inadmissible because of a defect found in the warrant after its execution. *Dunn v. State,* 951 S.W.2d 478, 479 (Tex.Crim.App.1997) (after warrant executed, officers realized warrant had not been signed by magistrate, even though magistrate meant to sign all 21 warrants); *Jones v. State,* 914 S.W.2d 675, 677 (Tex.App.—Amarillo 1996, no pet.) (after warrant executed, the affiant-officer who executed the warrant realized the apartment number was not number 104, but number 204); *Rios v. State,* 901 S.W.2d 704, 707 (Tex.App.—San Antonio 1995, no pet.) (after warrant executed, officers realized the warrant described the place to be searched as a

vehicle when it should have been a house, a typographical error).

When errors in the warrant are those that fall under the "good faith" exception, they can be explained at the hearing on the motion to suppress. In *Dunn,* the Court of Criminal Appeals considered evidence explaining how the magistrate overlooked signing the arrest warrant; in *Jones,* the Amarillo Court of Appeals considered the officer's testimony that the informant pointed out the apartment but gave him the wrong apartment number; in *Rios,* the San Antonio Court of Appeals considered evidence explaining how the typographical error was made. *Dunn,* 951 S.W.2d at 479; *Jones,* 914 S.W.2d at 677; *Rios,* 901 S.W.2d at 707.

In this case, the officer who executed an affidavit was the same officer who executed the search warrant. The affidavit provided probable cause to search; the only error was in the description of the place to be searched. The magistrate issued the warrant based on probable cause, which is not challenged by the appellant. The officer testified at the suppression hearing, and explained he erroneously described the address to be searched because he thought the house faced Brooks Street, when actually it faced New Orleans Street. There was no evidence received at the hearing to suggest anything but objective good faith on the part of the officer. Excluding the evidence seized from the house at 2417 New Orleans Street would not promote the purposes of the Fourth Amendment.

Under article 38.23(b), the affiant-officer who executed the warrant may explain defects in the affidavit at the hearing on the motion to suppress. *See Dunn,* 951 S.W.2d at 479; *Jones,* 914 S.W.2d at 677; *Rios,* 901 S.W.2d at 707; *cf. U.S. v. Gordon,* 901 F.2d 48, 50 (5th Cir.1990) (officer who executed affidavit and was present when warrant was

---

1. Article 38.23(b) did not codify the entire holding in *Leon.* The distinction between article 38.23 and *Leon* is that *Leon* applies the "objective good-faith" exception to defects in the description of probable cause and (presumably) other less important defects. *Leon,* 468 U.S. at 922, 104 S.Ct. at 3420. By comparison, article 38.23(b) applies the "objective good faith" exception to defects *other than those in the probable cause.* Article 38.23(b) still requires the warrant to be issued "by a neutral magistrate *based on*

probable cause." Article 38.23(b) does not permit the introduction of evidence seized under a warrant that ultimately is found to be unsupported by probable cause, as does *Leon. See Curry v. State,* 808 S.W.2d 481, 482 (Tex.Crim.App.1991); *Gordon v. State,* 801 S.W.2d 899, 912–13 (Tex. Crim.App.1990). The error in this case in the description of the place to be searched is the very type of error which the Legislature expected to be cured by the "objective good faith" exception in article 38.23(b).

executed testified at suppression hearing regarding mistake in street name). Under the circumstances of this case, an error in the warrant description may be cured by facts known by the affiant-officer who is also the executing officer. 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 4.5(a), at 525 (3d ed.1996); *see, e.g., Jones,* 914 S.W.2d at 677; *Rios,* 901 S.W.2d at 707; *Gordon,* 901 F.2d at 50.

The panel should affirm based on Texas Code of Criminal Procedure article 38.23(b). For these reasons I write to concur in the judgment.

NUCHIA, J., joins in this concurring opinion.

