**Diana Lyn TAYLOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–95–00182–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 9, 1998.

---

10.  See *Lege,* 919 S.W.2d at 876; *Jaeger,* 867   S.W.2d at 837.

James M. Brooks, Houston, for appellant.

Rikke Burke Graber, Houston, for appellee.

Before MURPHY, C.J., and HUDSON and FOWLER, JJ.

## OPINION

HUDSON, Justice.

Appellant, Diana Lyn Taylor, entered a plea of not guilty before a jury to the offense of possession with intent to deliver a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.033(1)(D), 481.113 (Ver-

non 1992). She was convicted and the trial court assessed punishment at ten years probation. In her sole point of error, appellant complains the trial court erred in admitting the contraband into evidence because the search warrant utilized by police did not correctly describe the place to be searched. We affirm the trial court's judgment.

In early May 1994, a confidential informant told Detective J. Stamper of the Harris County Sheriff's Department that narcotics were being sold at a residence in Humble, Texas. Acting on this tip, Stamper arranged for the informant to make a controlled buy. The informant was first searched to insure he had no narcotics on his person. He was then given $160 in marked money and sent into the residence to purchase cocaine. Stamper and another officer watched the informant enter the house and reappear, several minutes later, with approximately one-eighth of an ounce of cocaine. The informant reported that he had purchased the cocaine from a woman named "Diane."

Making note of the address and the appearance of the house, Stamper returned to his office where he discovered that utility billing records indicated that electrical service was being provided to "Diane L. Taylor" at that location. Armed with this information, Stamper obtained a warrant to search the residence. The warrant described the place to be searched as a premises controlled by Diane L. Taylor. It further described the house as follows:

7131 Fox Port, Humble, Harris County, Texas, more specifically described as a single family, two story residential dwelling. The residence is constructed of beige wood framing with a brown composition roof. The front door of the residence faces south. There is a two car attached garage on the right side of the residence as you face the residence. The numerals "7131" are displayed in white on a black background on the curb directly in front of the residence.

Stamper and other deputies went to the residence the following day to execute the warrant. While standing at the front door, Stamper noticed the address on the warrant

was "7131 Fox Port," but the actual address of the house was "7031 Foxport." Upon discovering the clerical error, Stamper ordered his men to retreat from the property. Stamper then contacted the Harris County District Attorney's Office to seek legal advice. Despite the erroneous description, an assistant district attorney advised Stamper to proceed with the search. Deputies executed the warrant and found cocaine in the master bedroom. Taylor was arrested and charged with possession of a controlled substance, weighing less than 28 grams.

Prior to trial, Taylor's counsel filed a motion to suppress the contraband because the warrant contained a defective description of the premises. Taylor contends the trial court erred in overruling her challenge.

Prior to the American Revolution, courts commonly issued "writs of assistance" to revenue officers. These writs authorized the officers to search places suspected of concealing smuggled goods. THOMAS M. COOLEY, CONSTITUTIONAL LIMITATIONS 301–03 (Boston: Little, Brown, and Co. 1868). James Otis described the practice as "the worst instrument of arbitrary power, the most destructive of English liberty and the fundamental principles of law" that ever was found in an English law book. It placed, Otis said, "the liberty of every man in the hands of every petty officer." *Id.* The constitutional proscription prohibiting the government from searching property without a detailed search warrant was designed to prohibit a "recurrence of abuses so deeply felt by the Colonies as to be one of the potent causes of the Revolution." *United States v. Rabinowitz,* 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950) (Frankfurter, J., dissenting).

Accordingly, a search warrant must be (1) based upon probable cause;[1] (2) it must describe the place to be searched;[2] and (3) it must describe the items or property to be seized.[3] These requirements protect the privacy and security of individuals by guarding against arbitrary invasion by governmental officials. *Berger v. New York,* 388 U.S. 41, 53, 87 S.Ct. 1873, 18 L.Ed.2d 1040, (1967). They also limit the discretion of police officers and prevent a "free-wheeling" general search. *Chambers v. State,* 508 S.W.2d 348, 352 (Tex.Crim.App.1974); *Schalk v. State,* 767 S.W.2d 441, 452 (Tex.App.-Dallas 1988), *aff'd,* 823 S.W.2d 633 (Tex.Crim.App.1991) ("description should … not confer free-wheeling discretion upon the officer.").

Here, Taylor contends these constitutional prerequisites were not satisfied because the search warrant did not adequately describe and identify the place to be searched. She claims no reasonable person could have identified the property to be searched from the description found in the warrant without significant danger of invading the wrong premises. *See Bridges v. State,* 574 S.W.2d 560, 562 (Tex.Crim.App.1978). Because he had previously accompanied the informant to the location and had seen him enter the residence, Stamper admitted his identification of the property was aided by his familiarity with the investigation. Taylor argues that Stamper's reliance on his personal knowledge may not be used to bolster the warrant, and that the "warrant must be sufficient on its face to enable *any* executing officer to locate and distinguish the property, avoiding a reasonable probability of mistaken execution." *See Olivas v. State,* 631 S.W.2d 553, 556 (Tex.App.-El Paso 1982, no pet.) (emphasis added).

1. *See Hughes v. State,* 843 S.W.2d 591, 593 (Tex. Crim.App.1992) ("A search warrant may not issue unless it is based upon probable cause."); *Meeks v. State,* 851 S.W.2d 373, 376 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd) ("Under the United States and Texas constitutions, a search warrant may not issue unless it is based upon probable cause.").

2. *See Miller v. State,* 134 Tex.Crim. 118, 114 S.W.2d 244, 245 (1938); *Rios v. State,* 901 S.W.2d 704, 706 (Tex.App.-San Antonio 1995, no pet.) ("Both the Texas Constitution and the Code of Criminal Procedure provide that a search warrant describe the place to be searched 'as near as may be.' ").

3. *See Lindley v. State,* 773 S.W.2d 579, 581 (Tex. App.-Tyler 1989, pet. ref'd) ("The Fourth Amendment to the United States Constitution and Tex. Const. art. I, Sec. 9, prohibit general warrants which fail to particularly describe the property to be seized and allow general exploratory searches.").

The State responds by claiming the error, if any, was waived when Taylor pled guilty without the benefit of a plea bargain agreement. *See Helms v. State*, 484 S.W.2d 925, 927 (Tex.Crim.App.1972). The record, however, contains conflicting statements as to whether Taylor entered a plea of guilty or not guilty.[4] Thus, we decline the invitation to impose the *Helms* rule under the record before us.

The State also seems to argue that the description in the warrant was sufficiently specific to permit any officer to accurately identify the premises to be searched. We disagree. At the suppression hearing Taylor established four discrepancies in the description: (1) the street address;[5] (2) the street name;[6] (3) the direction the house faced;[7] and (4) the occupant's name.[8] While many of the discrepancies are insignificant, both parties agreed that no house is located at the address specified in the warrant.[9] Moreover, Taylor presented photographic evidence showing there were other houses on Foxport in close proximity to her home that matched the general description contained in the warrant. Without the specialized knowledge acquired from his familiarity with the previous day's investigation, we do not believe Detective Stamper could have identified the property described in the warrant without the reasonable possibility of a mistaken identification.

Thus, the issue before us is, when identifying the property to be searched, may an officer supplement the descriptive averment in a warrant with his personal knowledge. We have previously held that when testing the sufficiency of a warrant in this context, we will eliminate the individualized, supplementary knowledge of the officer executing the warrant. *See Williams v. State*, 928 S.W.2d 752, 754 (Tex.App.-Houston [14th Dist.] 1996), *aff'd on other grounds*, 965 S.W.2d 506 (Tex.Crim.App.1998). The courts of this state, however, are divided on the issue, and our decision in *Williams* was recently criticized by our sister court in *Smith v. State*, 962 S.W.2d 178, 185 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd).

---

4. The judgment reflects Taylor entered a plea of "not guilty." A hand-written entry on the docket sheet for November 2, 1994, also states that Taylor entered a plea of "not guilty." This statement, however, is followed by a "stamped" entry which recites that Taylor pled guilty.

There is no court reporter's record of the plea hearing, but the trial judge commenced the sentencing hearing by saying:

> Let the record reflect we're before the court today for sentencing. The defendant previously appeared before the court, *entered a plea of not guilty*. The court, after hearing the evidence and the motion to suppress evidence and the other evidence offered by the parties, the court found the defendant guilty. The court recessed the case, conducted a presentence investigation. The presentence investigation has been conducted. It has been made a part of the court's file. The court is familiar with its contents. Does either side have any additional evidence to offer at this time?

(emphasis added). Moments later, after ascertaining that neither side had any additional evidence nor desired to present any argument, the trial judge said:

> Very well. Diana Lyn Taylor, *based on your plea of guilty* and the evidence presented before me, the court finds you guilty in Cause No. 9410647 of the felony offense of possession of cocaine and assesses your punishment at 10 years confinement in the institutional division of the Texas Department of Criminal Justice and a $500 fine. However, it appearing that the best interests of society will be served as well as your own, the court is going to suspend imposition of the confinement portion of this sentence and place you on probation for a period of 10 years.

(emphasis added).

Finally, the stipulation offered in support of the plea reflects that Taylor was careful to make no judicial confession of guilt. She stipulated only that, if called to testify, the State's witnesses would prove up the elements of the offense. Thus, the stipulation is consistent with a plea of "not guilty."

5. The actual street address is 7031 and not 7131 as stated several times in the warrant.

6. The actual street name is one word, namely, "Foxport." The warrant states the street name is "Fox Port."

7. The direction is incorrect because appellant's house faces west and not south as stated in the warrant.

8. The occupant's (appellant) name is "Diana" L. Taylor. The warrant describes the occupant as "Diane" L. Taylor.

9. The 7000 block of Foxport ends in a cul-de-sac. The place where one would expect to find the 7100 block of Foxport is an undeveloped area of forested land. Further west, however, the street resumes with the 7300 block of Foxport.

The Eighth, Twelfth, Thirteenth and Fourteenth Courts of Appeals have held that a valid warrant must be sufficiently descriptive to permit *any* officer to locate the property with no reasonable possibility of a mistaken execution. *See Olivas,* 631 S.W.2d at 556; *Lindley v. State,* 855 S.W.2d 723, 725 (Tex. App.-Tyler 1990), *vacated and remanded on other grounds,* 838 S.W.2d 257 (Tex.Crim. App.1992); *Mason v. State,* 838 S.W.2d 657, 660 (Tex.App.-Corpus Christi 1992, pet. ref'd); *Williams,* 928 S.W.2d at 754. On the other hand, the First and Seventh Courts of Appeals have held that an executing officer may supplement the warrant's descriptive averment with knowledge obtained from his own observation of the place to be searched. *See Smith,* 962 S.W.2d at 185; *Jones v. State,* 914 S.W.2d 675, 678 (Tex.App.-Amarillo 1996, no pet.).

The Court of Criminal Appeals has also delivered conflicting opinions. In *Cruze v. State,* 114 Tex.Crim. 450, 25 S.W.2d 875, 876 (1930), the court upheld a search based upon a warrant that described the place to be searched only as "the residence and buildings appurtenant thereto occupied by P.C. Cruze" in Robertson County. The warrant did not contain the street address or even the name of the city in which the residence could be located. Although the officers executing the warrant must have relied upon their own knowledge regarding the whereabouts of the Cruze residence, the court held the description to be sufficient.

Less than three decades later, however, the court expressly overruled *Cruze. See Helton v. State,* 164 Tex.Crim. 488, 300 S.W.2d 87, 89 (Tex.Crim.App.1957). In *Helton,* the court suppressed the fruits of a search where the warrant's descriptive averment did not name the city within Nueces County where the street address could be located. In 1970, however, the court upheld a warrant that failed to name the city in which the street address could be found. *See Ex parte Flores,* 452 S.W.2d 443, 444 (Tex. Crim.App.1970).

Eight years later, in *Bridges v. State,* 574 S.W.2d 560, 562 (Tex.Crim.App.1978), the court was confronted with a case in which police arrested the defendant for aggravated robbery. While arresting the defendant inside his home, police saw what they reasonably believed to be part of the property taken in the robbery. Based on this observation, police obtained a search warrant for the defendant's residence that named the county and street address of the premises, but failed to mention the city. Recognizing the conflict in its previous decisions, the Court of Criminal Appeals overruled *Helton* and upheld the warrant based, in part, on the fact that the officers had already been to the residence and were familiar with its location. *See Bridges,* 574 S.W.2d at 562.[10]

The Court of Criminal Appeals stopped short of always permitting an officer to rely on his personal knowledge to locate the place to be searched. To better protect the rights of society and innocent third parties, the court announced it would evaluate each warrant individually when assessing the sufficiency of a descriptive averment. *See Bridges,* 574 S.W.2d at 562. While we know from *Bridges* that not every defective description may be supplemented by an officer's personal knowledge, we are unable to derive further guidance from the court's opinion. However, after reviewing the decisions in *Bridges, Smith,* and *Jones,* we feel compelled to re-examine our holding in *Williams.*

We agree with our holding in *Williams* that if a warrant describes the place to be searched with enough precision and detail to permit *any* officer to locate the property with *no* reasonable probability of a mistaken execution, the descriptive averment is *always* adequate whether or not it contains technical defects. We also note that sometimes, the technical defects in a description are so superficial that they may not be discovered until *after* the execution of the warrant. In these instances, the officer's "good faith" reliance will often overcome the defec-

---

**10.** We find it instructive that the Fifth and Eleventh Circuits of the United States Courts of Appeals have also adopted this rationale. *See United States v. Gordon,* 901 F.2d 48, 50 (5th Cir. 1990); *United States v. Burke,* 784 F.2d 1090, 1092–93 (11th Cir.1986); *United States v. Weinstein,* 762 F.2d 1522, 1532–33 (11th Cir.1985).

tive description. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23(b) (Pamph.1998); *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).[11] However, if the descriptive defects are of such magnitude that the place to be searched cannot be located from the face of the warrant alone, we reject the implication in *Williams* that the executing officer may *never* rely upon his personal knowledge of the place to be searched.

▌ It is well established that the reviewing court is restricted to the four corners of the affidavit when assessing the existence of probable cause. *See Ashcraft v. State,* 934 S.W.2d 727, 732 (Tex.App.-Corpus Christi 1996, pet. ref'd). To determine why a different rule should apply in regard to the description of the place to be searched we must review the purpose of the descriptive averment. As we noted earlier, our state and federal constitutions require the affiant to identify the place to be searched with some particularity. *See* TEX. CONST. art. I, § 9 (no warrant "shall issue without describing [the property] as near as may be"); U.S. CONST. art. IV ("no warrants shall issue . . . [unless] particularly describing the place to be searched"). The primary objectives of the

descriptive averment are: (1) to direct the executing officer to the place to be searched; (2) to confirm that probable cause has focused on the place named in the warrant;[12] (3) to limit the officer's discretion and narrow the scope of his search;[13] (4) to minimize the danger of mistakenly executing the warrant on the unintended property of an innocent owner or resident;[14] and (5) to apprize the owner or resident of the officer's authority to search his premises.[15]

▌ While reliance upon the officer's personal knowledge minimizes the prospect of a mistaken execution, it heightens the danger of a general search. To guard against mistaken executions without compromising the constitutional prohibitions against a general search, we find that an officer's personal knowledge may be used to help him locate the property to be searched. However, of the five objectives of a descriptive averment, an officer's personal knowledge can be used *only* in satisfaction of the first and fourth objectives, *i.e.,* finding the place to be searched and minimizing the risk of a mistaken execution. If the remaining objectives are not satisfied by the warrant alone, the

**11.** Here, the defective street address was noticed by Detective Stamper *before* the warrant was executed. Because he was aware of the defect when he executed the warrant, there can be no good faith reliance.

**12.** A detailed description of the place to be searched helps confirm that probable cause has focused upon a specific building, premises, or vehicle. In this sense, the descriptive averment augments the first prerequisite to a valid warrant, *i.e.,* that it be based upon probable cause. *See* 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 4.5, at 513 (1996) ("the requirement of particularity is related to the probable cause requirement, in that—at least under some circumstances—the lack of a more specific description will make it apparent that there has not been a sufficient showing to the magistrate that the described items are to be found in a particular place").

A belief that criminal activity has occurred, even if reasonable, does not necessarily justify a search. Probable cause must first focus on a specific location. If the affiant is unable to state with precision the place to be searched and why he reasonably believes that contraband or evidence of criminal activity will be found there, it is highly doubtful he possesses probable cause for a warrant.

**13.** The descriptive averment helps prevent the possibility of a random search. When the place to be searched is accurately and precisely described in the warrant, the police have no discretion to search any building other than the one so described. *See McGlothlin v. State,* 705 S.W.2d 851, 856 (Tex.App.-Fort Worth 1986), *rev'd on other grounds,* 749 S.W.2d 856 (Tex.Crim.App. 1988).

**14.** By severely limiting the officer's discretion as to what place may be searched, the descriptive averment helps protect innocent citizens from having to endure the disquieting experience of a mistaken search of their dwellings or other property by armed law enforcement officers. *See Mansell v. State,* 756 S.W.2d 95, 98 (Tex.App.-San Antonio 1988, pet. ref'd) (stating that primary purpose for constitutional requirement of a descriptive averment is to minimize the risk that officers executing search warrants will by mistake search a place other than the place intended by the magistrate).

**15.** *See United States v. Burke,* 784 F.2d 1090, 1092 (11th Cir.1986).

descriptive averment is too defective to support a valid search.

Here, it is clear from the supporting affidavit that Detective Stamper observed the informant purchase cocaine from .Taylor's home and he had probable cause to believe the residence contained contraband. Even though the descriptive averment is defective, it is sufficiently detailed to foreclose any possibility that the police manufactured a generic description of a location that would authorize them to randomly search residences in the area. The color, style of construction, and floor plan of the house were correct. The street name and resident's name are misspelled, but otherwise correct. The compass heading is approximately correct. The street address is off by one digit, but no house exits at the address named in the warrant. While Stamper may have relied upon his personal knowledge to locate the house, once located, it is clear the house described in the warrant *is* the house searched by police. Detective Stamper searched no home other than Taylor's residence, nor is there any suggestion in the record that Stamper searched the *wrong* home. Finally, we believe the description in the warrant was sufficiently detailed to prevent Taylor from reasonably questioning the officer's authority to search her home.

 In summary, if the descriptive averment is omitted from a warrant or it is wholly erroneous, the warrant is invalid as a matter of law. *See Rios v. State,* 901 S.W.2d 704, 706 (Tex.App.-San Antonio 1995, no pet.). However, if the warrant contains a detailed, but partially inaccurate description, we look first to see whether it contains enough correct information to permit *any* officer to locate the place without danger of misidentification. If it does, the search will be upheld. *See Williams,* 928 S.W.2d at 754. If it does not, we look to see whether the descriptive averment contains enough details to (1) conclusively establish that the place searched is the same place where probable cause for the search had focused; (2) clearly define and limit the scope of the search, and (3) give the owner reasonable assurance of the officer's authority to search his property as opposed to other properties in the area.

If these elements are satisfied, we hold the executing officer may rely upon personal knowledge to (1) help locate the property and (2) prevent the mistaken search of an innocent person's property. *See Bridges,* 574 S.W.2d at 562; *Smith,* 962 S.W.2d at 185; *Jones,* 914 S.W.2d at 678. *See also* WAYNE R. LaFAVE, SEARCH AND SEIZURE § 4.5(a), at 517–18 (West 1996). This is particularly true where the executing officer is also the affiant.

Accordingly, we overrule appellant's sole point of error and affirm the trial court's judgment.