In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00064-CV


______________________________




JASON BLAKENEY, Appellant



V.



STATE OF TEXAS, BILL SABAN, AND KYLE FREEMAN, Appellees




 


On Appeal from the 4th Judicial District Court


Rusk County, Texas


Trial Court No. 2006-310




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Jason Blakeney, an inmate of the Texas Department of Criminal Justice-Institutional
Division, filed a pro se civil suit in the Fourth Judicial District Court of Rusk County, Texas. 
Blakeney's original petition was filed June 28, 2006, and named Bill Saban and Kyle Freeman,
former prosecuting attorneys of the Rusk County District Attorney's Office, as well as the State of
Texas, as defendants. Blakeney's lawsuit alleged that, among other things, the defendants used fraud,
deception, and undue influence to get him to enter into negotiated plea agreements on three criminal
charges. (1) Thus, Blakeney sought to have the trial court (a) rescind the plea agreements and/or
(b) enjoin the above-named defendants from enforcing the terms of his plea agreements in the three
criminal cases. 

 On October 23, 2006, the defendants filed a motion to dismiss Blakeney's suit. That motion
called for the dismissal of Blakeney's suit for several reasons: First, the defendants believed
Blakeney's original petition did not satisfy the procedural requirements of Section 14.004 of the
Texas Civil Practice and Remedies Code because he failed to attach the required listing of each of
Blakeney's previously filed pro se civil lawsuits. (2) Second, the defendants alleged Blakeney's lawsuit
was frivolous because the relief sought by Blakeney was more properly obtained (if his claims were
meritorious, which the State did not so concede) through an application for writ of habeas corpus. 
See generally Tex. Code Crim. Proc. Ann. art. 11.07 (Vernon 2005). And, third, the defendants
believed they were prohibited from being sued because the conduct complained of occurred in
connection with the defendants' exercise of their official capacities as state officials, which entitled
them to "absolute prosecutorial immunity as a matter of law." 

 The trial court, the Honorable Paul Banner, presiding, conducted a hearing February 14,
2007, on the State's dismissal motion. At the conclusion of the hearing, the trial court granted the
State's motion, finding that Blakeney's lawsuit concerned the exercise of conduct by the defendants
in their official capacities as former prosecutors for the State and that the defendants were entitled
to governmental immunity from suit. Blakeney now appeals. We affirm.

 "District attorneys and other prosecutors are absolutely immune from liability when
performing their prosecutorial functions." Charleston v. Pate, 194 S.W.3d 89, 90 (Tex.
App.--Texarkana 2006, no pet.) (citing Imbler v. Pachtman, 424 U.S. 409 (1976); Font v. Carr, 867
S.W.2d 873 (Tex. App.--Houston [1st Dist.] 1993, writ dism'd w.o.j.); Miller v. Curry, 625 S.W.2d
84, 86-87 (Tex. App.--Fort Worth 1981, writ ref'd n.r.e.)). The acts of Freeman and Saban that
Blakeney alleged as the basis of his suit were all performed in representing the State in prosecuting
the multiple criminal cases against Blakeney. As such, they were acts intimately connected with the
judicial process. The trial court correctly dismissed Blakeney's suit against the defendants on the
basis of prosecutorial immunity.

 Moreover, the relief ultimately sought by Blakeney--the "undoing" of his negotiated plea
agreements in multiple criminal cases--is more properly the subject of an application for writ of
habeas corpus. Blakeney acknowledges that he has previously filed several applications for the writs
of habeas corpus in connection with the underlying criminal convictions, but that the Texas Court
of Criminal Appeals has denied those applications. As such, the Texas Court of Criminal Appeals'
decision(s) to adjudicate the merits of Blakeney's current claims via the post-conviction writ process
would further serve as a bar to the trial court's ability to grant relief in this case. See Tex. Code
Crim. Proc. Ann. art. 11.07, § 4 (prohibiting trial court from considering challenges to criminal
conviction on subsequent application when those challenges were not, but should have been, raised
in first habeas application); see also Chandler v. Chandler, 991 S.W.2d 367, 392 (Tex. App.--El
Paso 1999, pet. denied) (res judicata bars later lawsuit between same parties concerning same issues
that were previously decided to finality). The trial court's written judgment properly recognized that
bar, which the trial court took into consideration in rendering its judgment of dismissal.

 In short, the trial court's judgment is proper and right under our law. It is, therefore, affirmed.




 Jack Carter

 Justice


Date Submitted: September 6, 2007

Date Decided: October 11, 2007

1. The record reflects Blakeney agreed to plea bargains in three Rusk County cases: a ten-year
sentence in cause number CR98-065, a life sentence in cause number CR01-110, and a five-year
sentence in cause number CR98-067. The record further shows that, in exchange for Blakeney's plea
in those cases, the State dismissed an aggravated kidnapping charge (CR01-109), two attempted
escape charges (cause numbers CR01-160 and CR01-161), and an arson charge (cause number
CR01-162). See Tex. Penal Code Ann. § 20.04 (Vernon 2003) (aggravated kidnapping generally
a first-degree felony); Tex. Penal Code Ann. § 38.06 (Vernon 2003) (escape generally a third-degree felony); Tex. Penal Code Ann. § 28.02 (Vernon Supp. 2006) (arson generally a second-degree felony); and see Tex. Penal Code Ann. § 15.01(d) (Vernon 2003) (punishment for criminal
attempt generally one level below punishment for completed crime). According to Blakeney, the
first two sentences were to be served concurrently; Blakeney would not begin serving the third
sentence (of five years) until he had first completed serving the other sentences. 
2. See Tex. Civ. Prac. & Rem. Code Ann. § 14.004 (Vernon 2002).


s to establish the reliability or credibility of the
informant. She argues the affidavit provides no details that make the statement credible, that the
confidential informant had provided the affiant with information in the past relating to narcotics
trafficking, which proved to be true and correct, worthy of belief. She further argues the affidavit
failed to state whether this information led to arrests, convictions, or cases being filed and how many
times the informant had given any information or over what period of time. She also argues the
affidavit provides no factual support for the statement the affiant knows that the confidential
informant is familiar with the appearance of cocaine. 

 The affidavit need not provide more specific details regarding the informant's reliability than
to state the informant had given information in the past regarding narcotics trafficking which had
proved correct. Torres v. State, 552 S.W.2d 821, 824 (Tex. Crim. App. 1977); Hammond v. State,
898 S.W.2d 6, 7-8 (Tex. App.-Dallas 1995, no pet.); Davis v. State, 696 S.W.2d 494, 498 (Tex.
App.-El Paso 1985, no pet.). Because such a statement, when interpreted in a realistic and
commonsense manner, indicates the informant's familiarity with controlled substances, no further
details are required to spell out the informant's qualifications in recognizing specific drugs. See
Torres, 552 S.W.2d at 824; see also Palmer v. State, 614 S.W.2d 831, 832-33 (Tex. Crim. App.
[Panel Op.] 1981). 

 The affidavit clearly stated that the informant had provided information in the past relating
to narcotics trafficking and that such information had proved true and correct. The affidavit went
on to state the affiant knew that the informant was familiar with the appearance of cocaine. The
affidavit was sufficient to provide the magistrate with facts on which to base a determination of the
informant's credibility. 

 However, a finding of credibility and reliability for the information contained within the
affidavit is not enough. The information in the affidavit, found to be credible and reliable, must
provide the magistrate with a substantial basis for concluding there is a fair probability that
contraband or evidence of a crime will be found in a particular place. See Gates, 462 U.S. at 238. 

 To this end, the affidavit must be sufficient to determine the timeliness of the information
contained therein. See Sherlock v. State, 632 S.W.2d 604 (Tex. Crim. App. [Panel Op.] 1982)
(affidavit was insufficient where there was no information regarding when the informant's
observations were made); Mendiola v. State, 865 S.W.2d 540, 542 (Tex. App.-Corpus Christi 1993,
no pet.) (affidavit was sufficient when it stated the informant's observation was within the past
seventy-two hours). 

 Bass contends the phrase "within the past 48 hours prior to the issuance of this warrant" fails
to provide the magistrate with a meaningful basis to determine the timeliness of the information the
informant provided because the warrant could not have been issued at the time the affidavit was
being prepared and it would be impossible for the officer to know, at the time the affidavit was being
prepared, when or whether the warrant would be issued. However, the affidavit and the search
warrant were signed the same day. The magistrate, viewing the date on the affidavit, would have
been able to take that into account in interpreting the affidavit and making inferences from the facts
stated therein. It is unnecessary to assume the magistrate interpreted the statement to mean the
officer had anticipated the hour in which he would submit the affidavit to the magistrate, as the State
suggests. Even assuming the magistrate interpreted that statement to mean within forty-eight hours
of the affidavit being signed, which would put the informant's observation furthest back in time, to
at most seventy-two hours, the affidavit provided some indication of when the informant's
observations were made.

 The State argues that a two-day lapse between the time of the informant's observations
concerning the presence of drugs and the issuance of a warrant does not render the information stale. 
See Douglas v. State, 794 S.W.2d 98 (Tex. App.-Houston [1st Dist.] 1990, pet. ref'd). In the
Douglas case, the court found that the period of time involved did not render the information stale. 
This determination was made even though the lapse of time between the presence of the informant
on the premises in question may have been as long as four days before the issuance of the warrant. 
The court in Douglas recognized that "just how long a time may be permitted to elapse without
destroying the basis for a reasonable belief as to the continuance of the situation set forth in the
affidavit will vary according to the facts of the individual case." Id. at 101-02 (citing Moore v. State,
456 S.W.2d 114, 115 (Tex. Crim. App. 1970). Thus, a determination of timeliness is based not only
on the amount of time that elapsed since the informant obtained the information, but also on what
that information was, as reflected by the affidavit. Even though the magistrate in the present case
could reasonably infer that the information was obtained by the informant between forty-eight and
seventy-two hours before presentment of the affidavit, this alone would not be enough for the court
to determine the information was stale. There must be a substantial basis for the magistrate to have
found there was a fair probability that contraband or evidence of a crime would be found in a
particular place. See Gates, 462 U.S. at 238. 

 To this end, the affidavit must also sufficiently describe the premises to be searched. See
Smith v. State, 962 S.W.2d 178, 184 (Tex. App.-Houston [1st Dist.] 1998, pet. ref'd). Bass contends
that because the affidavit contained an incorrect address and lacked supporting facts regarding the
location to be searched, it failed to provide a nexus between the information the affiant received from
the informant and the location described in the affidavit. 

 Minor discrepancies will not invalidate a warrant if the affidavit and warrant otherwise
sufficiently describe the premises to be searched. See id.; see also Taylor v. State, 974 S.W.2d 851,
855-56 (Tex. App.-Houston [14th Dist.] 1998, no pet.); Jones v. State, 914 S.W.2d 675, 678 (Tex.
App.-Amarillo 1996, no pet.). The warrant must identify the place to be searched sufficiently so that
the officers who execute the warrant, acting as reasonable men, can locate that place and identify it
from other places in the community. See Smith, 962 S.W.2d at 184 (citing Bridges v. State, 574
S.W.2d 560 (Tex. Crim. App. 1978)). Because such discrepancies or insufficiency may not be
apparent on the face of the affidavit, evidence beyond the affidavit may be required at the hearing
on the motion to suppress to determine whether the description of the location to be searched was
sufficient. See Jones v. State, 914 S.W.2d 675, 678 (Tex. App.-Amarillo 1996, no pet.). 

 Although the street address was incorrect on the affidavit, the location of the residence was
described in detail. Brannon, the affiant and executing officer, was the only witness at the
suppression hearing. Brannon testified he had obtained the street address from the Kilgore police
records, as stated in the affidavit. Brannon also testified the informant had provided the description,
except for the street address. The affidavit states the informant had been to the location listed in
paragraph one. Brannon testified that he did not drive by to verify the description and address of the
house before he wrote the affidavit because it would have been detrimental to his investigation, but
that he was familiar with the house when the informant described the house to him, and he knew
which house the informant was describing. Brannon testified he would be able to follow the
description to locate the residence. He testified that the officers discovered the incorrect address
during the execution of the warrant, but that the numerical address was the only error regarding the
description of the house.

 Based on the affidavit itself and the evidence adduced at the hearing on the motion to
suppress as summarized above, the description of the location to be searched was sufficient. 

 As to the contention the affidavit does not specifically show the basis of knowledge of the
identity of Bass or the basis of the informant's knowledge that the premises were under Bass's
control, the case of Illinois v. Gates, 462 U.S. 213, negates the necessity of a showing of the basis
of knowledge and adopts a totality of the circumstances review.

 The affidavit states the Kilgore police records indicated the suspect's address as 431 Wells
Street. On the face of the affidavit, the magistrate could have inferred the suspect would have
control over the address listed in the police records. However, the officers discovered that the street
number listed in the affidavit did not correspond to the residence that was otherwise described in the
affidavit. Because such error was not apparent on the face of the affidavit, we consider evidence
presented at the hearing on the motion to suppress. Officer Brannon testified he knew which house
the informant was describing because he was familiar with the house.

 Bass contends the use of the term "possession" without further supporting facts was a
conclusory statement that cannot support a finding of probable cause. See Hall v. State, 795 S.W.2d
195 (Tex. Crim. App. 1990); Cassias v. State, 719 S.W.2d 585 (Tex. Crim. App. 1986); Parish v.
State, 939 S.W.2d 201 (Tex. App.-Austin 1997, no pet.); Lowery v. State, 843 S.W.2d 136 (Tex.
App.-Dallas 1992, pet. ref'd); Alvarez v. State, 750 S.W.2d 889 (Tex. App.-Corpus Christi 1988,
pet. ref'd).

 The affidavit in the present case makes clear that the basis for the informant's conclusion was
personal observation; thus, the magistrate could reasonably infer that the informant observed the
cocaine and the suspect in some way that, based on the relation of one to the other, the informant
concluded that the cocaine was in the control of the suspect. 

 Reviewing the affidavit in the light of the totality of the circumstances, we find the
information contained in the affidavit provided the magistrate with a substantial basis for concluding
there was a fair probability that contraband or evidence of a crime would be found in a particular
place.

 The judgment of the trial court is affirmed.




 Ben Z. Grant

 Justice


Date Submitted: April 11, 2002

Date Decided: October 10, 2002


Do Not Publish